THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* RUDOLPH WATERMAN AND ALBERT DEVINE, Appellants.

First Department, December 20, 1960.

*Paul M. Bernstein* of counsel (*Anthony F. Marra,* attorney), for Rudolph Waterman, appellant.

*Maximilian W. Kempner* for Albert Devine, appellant.

*Irving Anolik* of counsel (*Isidore Dollinger, District Attorney*), for respondent.

STEVENS, J.   Defendants appeal from judgments of conviction, after trial, convicting them of the crimes of robbery in the first degree, grand larceny in the second degree and assault in the second degree.   The defendants were sentenced as second felony offenders to 15 to 20 years on the robbery conviction and sentence suspended on the other counts.

The crime charged occurred February 9, 1959, when one Shedletsky was held up and robbed by three persons, at least one of whom was armed.

An indictment was returned February 24, 1959, in which one Fields was named as a defendant and as a conspirator, but these defendants were indicted under the fictitious designations of " John Doe ", " Richard Roe " and " Peter Loe ".

Fields was apprehended immediately after the crime.   Subsequently, he pleaded guilty to a lesser crime and was sentenced in August, 1959.

One Detective Stratford, assigned to The Bronx, testified that on June 17, 1959, he questioned Waterman while he was incarcerated in the Tombs, and questioned him again on June 29, 1959, at the Bronx County Courthouse.   Stratford testified that Waterman made a complete confession on each occasion, though Stratford admitted he made no notes of the conversation on either occasion.

While it is not clear when the substitution of names was made in the indictment, it is clear that at the time of the conversations Waterman was in fact an accused. Again, though the record does not expressly so state, it seems evident that Fields at or shortly after his arrest implicated these defendants and that this information was in the possession of Stratford at the time of the alleged conversations.

On appeal, among the various grounds assigned, defendants argue the admission into evidence of the alleged confession was error.

In *People* v. *Di Biasi* (7 N Y 2d 544) cited by the defendants, the defendant was surrendered by his counsel some seven years after the return of the indictment. Thereafter, he was questioned at the District Attorney's office in the absence of his counsel before arraignment. The defendant neither confessed nor admitted guilt, but did make certain damaging admissions. Though the defendant did not take the stand, such admissions were testified to over the defendant's objections by a detective at the time of trial.

In reversing the conviction the Court of Appeals (DESMOND, Ch. J.) said: "We think this questioning was a violation of this defendant's constitutional rights and that the admission in evidence, over objection, of his admissions made during that questioning after indictment and surrender for arraignment was so gross an error as to require reversal, regardless of any other question in the case" (pp. 550–551).

FULD, J., in his concurring opinion in *People* v. *Di Biasi* (*supra*) pointed out "that the defendant's voluntary surrender was designed to assure him a prompt arraignment * * * The fact that his attorney surrendered him for such arraignment in court could not possibly be regarded as a consent or invitation to secret interrogation by police or prosecutor or a waiver of fundamental rights" (p. 552).

Compare *Spano* v. *New York* (360 U. S. 315) where defendant, surrendered by his counsel at approximately 7:15 P.M., was questioned extensively in the absence of his counsel until approximately 3:30 A.M. the morning following, when a confession was obtained. In the interval defendant's sympathy had been falsely aroused by misstatements made to him. The court held the confession involuntary and its admission into evidence and use inconsistent with the Fourteenth Amendment under traditional principles.

In the case before us, defendant Waterman was without counsel at the time of the alleged confession. He was not asked by Stratford if he had retained or been assigned counsel. The

fact that defendant Waterman was without counsel at the time of the questioning, when he was known to the interrogator to be an accused, should not deprive him of the benefit of the principle announced in *People* v. *Di Biasi* (7 N Y 2d 544, supra).

We recognize that this is a limitation on section 395 of the Code of Criminal Procedure and apparently runs counter to the general principle governing admissibility of confessions, i.e., that no one will voluntarily make an admission against himself unless it is true (*People* v. *Giro,* 197 N. Y. 152). But the circumstances under which the alleged confession was obtained may well stamp it as involuntary when fuller evidence is adduced. Stratford testified that the defendant did not solicit his presence, or declare his intention or wish to make a statement prior to Stratford's visit.

The mere fact that Waterman was in custody would not preclude admission of the alleged confession. The fact that he was then an accused, known to be so to the interrogator, together with other circumstances shown to exist, warrant application of the principle enunciated in the *Di Biasi* case.

*People* v. *Downs* (8 N Y 2d 860) can be distinguished. In that case the defendant, arrested in Florida after being indicted in New York, made admissions to the police and F. B. I. before his return to New York and repeated such statements in New York. Additionally, Downs took the stand and testified substantially in accordance with the statements given. Nor did he deny that such earlier statements were voluntary. Under the circumstances of that case neither harm nor prejudice resulted.

In view of the holding in the *Di Biasi* case, we are constrained to vote to reverse the conviction of Waterman, and, in the view we take, the error committed by the reception into evidence of such confession redounded to the prejudice of the codefendant Devine as well. Additionally, the limiting effect of Waterman's confession was not sufficiently delineated by the court as to Devine (cf. *People* v. *Lombard,* 4 A D 2d 666) in view of the continued references thereto by the prosecutor.

Other points raised by counsel are not passed upon because of the conclusion reached. The judgments appealed from should be reversed on the law only, the facts having been considered, and we being satisfied with the judgments in that respect (Code Crim. Pro., § 543-a), and a new trial ordered.

BOTEIN, P. J. (dissenting). The purpose of the due process requirement, in the context of this case, is to secure fundamental fair play and decent conduct by law enforcement officials in the procurement of evidence for trial use (*Lisenba* v. *California,* 314 U. S. 219, 236).

Through the years, case by case, the courts have shaped a set of guiding rules designed to safeguard the accused before as well as after indictment. These rules have been molded into a stern code of accountability for official transgressions which has gathered strength because its frontiers have been extended carefully through experience distilled from a succession of situations under review. The very vigor of this complex of rules derives from its capacity to accommodate, albeit cautiously for reasons later stated, to newly posed situations.

Certainly, to set the fact of indictment as the absolute, artificial boundary beyond which any statement made by an accused without benefit of counsel becomes inadmissible is utterly unreal. To illustrate: A suspect not under indictment could be coerced into making a confession by harsh measures falling just short of those proscribed by the cases. His statement would be voluntary, in the due process sense, and therefore admissible. On the other hand, a conscience-stricken defendant named in an indictment could surrender himself, simultaneously babbling his guilt without any prodding or questioning whatsoever; and this would be deemed an involuntary statement, and therefore inadmissible.

The majority rests its holding essentially on *People* v. *Di Biasi* (7 N Y 2d 544), which in turn relies heavily on *Spano* v. *New York* (360 U. S. 315). In the recent case of *People* v. *Downs* (8 N Y 2d 860), however, the Court of Appeals made it clear (as was expressed by the majority of the United States Supreme Court in the *Spano* case) that it had not held in *Di Biasi* that a defendant had an absolute right to representation by counsel during questioning after indictment.

In the *Spano* and *Di Biasi* cases, the defendants had surrendered voluntarily, and furthermore, through the instrumentality of their attorneys. On the other hand, in the *Downs* case, as here, the defendant was apprehended by the authorities, and did not surrender by arrangement with them. And in *Downs*, again as in the case under review, there was no suggestion of oppressive or unfair methods in procuring the confession. In holding all three confessions made by the defendant in the *Downs* case admissible, the Court of Appeals evidently determined that the fact that they had been made after indictment does not unqualifiedly extinguish their usability upon trial.

The chronological relationship of a confession to the filing of the indictment is just one ingredient of the entire set of circumstances determining whether a statement has been obtained voluntarily or involuntarily.

Of critical significance here, and so the Court of Appeals apparently took the pains to point out in distinguishing *Downs* from *Spano* and *Di Biasi*, is that in the two last-mentioned cases the defendants were surrendered voluntarily through their attorneys. In *Downs*, as here, " [d]efendant did not surrender himself to the authorities on the advice of and in the presence of counsel but was apprehended " (*People* v. *Downs, supra*, p. 860).

Di Biasi and Spano, in surrendering, had the right to expect that the authorities would recognize that such " surrender was designed to assure him a prompt arraignment, with all of its consequent advantages. The defendant had a right to the effective aid and assistance of the attorney who represented him. The fact that his attorney surrendered him for such arraignment in court could not possibly be regarded as a consent or invitation to secret interrogation by police or prosecutor or a waiver of fundamental rights " (*People* v. *Di Biasi, supra*, concurring opinion by FULD, J., p. 552).

There is a traditional and deep-rooted convention that in such circumstances a defendant surrenders to the sanctuary of judicial process, and will not be questioned by the authorities in the absence of his lawyer. This, of course, is not a statutory right; but due process safeguards are not violated only by conduct offending against the statutes.

In *People* v. *Spano* (4 N Y 2d 256) the court expressed concern about assuming " the responsibility of ameliorative regulation by judicial decision. Whatever reservations may be entertained as to the propriety of the procedure followed by the State here may be directed to the Legislature " (p. 264).

When the courts extend their reach in this area, however, they sometimes do more than legislate judicially. To the extent that they stamp certain law enforcement activities as unconstitutional violations of the rights of the accused, they are also preventing the Legislature from legislating in contravention of the judicial rulings.

The judgments of conviction should be affirmed.

VALENTE and McNALLY, JJ., concur with STEVENS, J.; BOTEIN, P. J., dissents and votes to affirm in opinion, in which BREITEL, J., concurs.

Judgments of conviction reversed, upon the law only, the facts having been considered, and a new trial ordered.