**UNITED STATES of America ex rel. Otis SWANSON, Appellant,**

v.

**Frederick G. REINCKE, Warden, Connecticut State Prison, Appellee.**

No. 323, Docket 29262.

United States Court of Appeals
Second Circuit.

Argued Feb. 16, 1965.

Decided April 21, 1965.

Charles D. Gill, New Haven, Conn., for appellant.

John D. LaBelle, State's Atty. (George D. Stoughton, Harry W. Hultgren, Jr., Brandon J. Hickey, Asst. State's Attys.), for appellee.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

On February 1, 1963, the State of Connecticut charged Otis Swanson with violation of § 19–246 of its General Statutes (Revision of 1958 and Supplemental Laws),[1] providing that:

"No person shall manufacture, possess, have under his control, sell, prescribe, dispense, compound, administer to himself or to another person or be addicted to the use of any narcotic drug, except as authorized in this chapter."

The information also referred to § 19–265, entitled "Penalty for illegal possession or dispensing," which provides that violation "other than by administering to himself or by being addicted to the use of narcotic drugs" carries a fine or a minimum imprisonment of five years for the first offense and ten for the second,

1. All section references will be to these statutes, as amended to February 1, 1963, the date of the violation, unless otherwise stated.

and a mandatory minimum imprisonment of fifteen years for any subsequent offense. Swanson, who was charged as a third offender, pleaded not guilty.

On May 9, 1963, the Superior Court authorized the State to withdraw the information and substitute one which, while again charging violation of § 19–246, made reference not to § 19–265 but to § 19–265a. This section, entitled "Penalty for self-administration or addiction," provided that, with exceptions not here material, "Any person who administers to himself or is addicted to the use of any narcotic drug * * * shall be imprisoned not more than five years, provided the court may commit the accused" to the custody of a probation officer or a hospital (shortly changed to the commissioner of mental health). The severe minima of § 19–265 are thus inapplicable when the prosecutor concedes that § 19–246 has been violated only by the conduct described in § 19–265a. Swanson pleaded guilty to the substituted information, which charged self-administration of heroin and that alone. When he appeared for sentencing, the Public Defender sought a postponement until Swanson should receive permission he had requested to enter the United States Public Health Service Hospital at Lexington, Kentucky, although conceding that previously Swanson had obtained permission to enter Lexington but had not gone. The court denied the request, noting that Swanson had eleven prior convictions on drug charges and saying, "Sometimes it is a meritorious situation and deserving of it, but I see no reason to defer sentence in this case based upon this man's record." The judge sentenced Swanson to a prison term of not less than a year and a half nor more than four years; we take it that he is still confined.

A year later Swanson filed a Connecticut habeas corpus petition attacking the constitutionality of the Connecticut statute as applied to him. Having exhausted state procedures, he filed a petition for habeas corpus in the District Court alleging that § 19–265a was unconstitutional under Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Judge Anderson appointed counsel and held a hearing. Counsel made no request to offer evidence on the extent of Swanson's addiction, and the only evidentiary material before us on this issue is the fact of his past narcotics convictions and a report of a physician who had treated Swanson on his arrest, which states that the latter "was suffering from withdrawal symptoms characteristic of those manifested by a narcotic addict." Judge Anderson denied the writ in a brief opinion, pointing out that Swanson pleaded guilty to self-administration of narcotics and not to addiction, but granted a certificate of probable cause and appointed counsel to represent Swanson on appeal.

■■ Although it is somewhat of a surprise to see federal habeas corpus used to test the substantive constitutionality of a state criminal statute as distinguished from its common use in challenging procedures alleged to infringe federal rights, decisions of many years' standing appear to support the propriety of this. Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717 (1884) (federal statute); Ex parte Royall, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620 (1890). While the writ seems to have been rarely employed for this purpose in recent times, it would be rather an understatement to say that the Supreme Court has not shown a disposition to shrink its scope. We likewise do not rest our decision on a procedural ground suggested by the State—that Swanson's plea of guilty, given after consultation with counsel and directed to a lesser offense than that originally charged, should bar this collateral attack. The cases most nearly in point but by no means exactly so concern guilty pleas proper in other respects, such as right to counsel, but lodged after the police had obtained evidence in violation of constitutional rights; a number of circuits have said

such guilty pleas are not subject to attack, Gonzalez v. United States, 210 F.2d 825 (1 Cir. 1954); Hall v. United States, 259 F.2d 430 (8 Cir. 1958), cert. denied, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680 (1959), even when induced by that evidence, Watts v. United States, 107 U.S. App.D.C. 367, 278 F.2d 247 (1960); United States ex rel. Staples v. Pate, 332 F.2d 531 (7 Cir. 1964). But cf. United States ex rel. Vaughn v. LaVallee, 318 F.2d 499 (2 Cir. 1963) (dictum). Compare Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956); Chambers v. State of Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940).[2] The State has intimated that habeas corpus is even less appropriate in Swanson's case because it forwent an opportunity to try him on a different charge not possibly subject to constitutional infirmity. But we have been told only that Swanson was first charged with possession and control of narcotics, and while this is a "separate and distinct" offense in Connecticut carrying a higher penalty than self-administration, State v. DaVila, 150 Conn. 1, 5, 183 A.2d 852, 854 (1962), we do not see, as will be developed below, that it stands differently as to constitutional attack on the part of an addict. In any event, it is unnecessary here to pursue the question when habeas corpus will lie after a voluntary plea of guilty entered after consultation with counsel, for we are satisfied that Swanson has not shown that the Connecticut statutes are unconstitutional as applied to him.

Although Swanson has characterized his attack as being upon § 19–265a, the statute defining the crime is § 19–246. Section 19–265a, like § 19–265 with which it interlocks, simply specifies the measure of punishment for crimes previously defined. To the extent that the two sections prescribe different punishment for the same act, they provide a means for distinguishing at the prosecutorial level persons recognized to be deserving of greater or lesser penalties. This means was employed in Swanson's case, for the substituted information was an election by the prosecutor to assert violation of § 19–246 only by self-administration, even though the same evidence would almost always support a conviction for possession and control and thus entail a larger sentence.

The DaVila opinion recognized that "[t]he validity of the part of § 19–246 which makes addiction to narcotics a crime in and of itself is open to question" under Robinson v. California, see 150 Conn. at 5, 183 A.2d at 854, a question which we should suppose would likely be answered against the statute. But the fall of that provision does not necessarily carry in its train the condemnations of self-administration or of possession and control incident thereto which DaVila indicates are separable under state law. The California courts had been at some pains to make clear that Robinson could be convicted on proof only that he was in California and that he was addicted—whether or not he had ever possessed or used narcotics in that state. 370 U.S. at 665–666, 678–679, 82 S.Ct. 1417 (concurring opinion of Mr. Justice Harlan). Passages in the opinion suggest that the constitutional infirmity lay in this very point of California's imposing a criminal penalty when an accused had done nothing save to be in the state in an addicted condition. 370 U.S. at 666–667, 82 S.Ct. 1417. But even if this be taken as only a makeweight and it be assumed *arguendo* that the Supreme Court would likewise condemn a statute limited to addiction acquired by unlawful use of narcotics within the state, the opinion repeatedly contrasts a "status" or an "illness," which the state cannot constitutionally punish, with "acts," which it implicitly can. The Court recog-

---

2. Herman, by dicta, and Chambers, by implication, could well be taken as sanctioning collateral attack. But the issue in the first case was complicated by lack of counsel, and in the second case the state court itself permitted the collateral attack and the Supreme Court simply reviewed its decision on the substantive federal question.

nized "the broad power of a State to regulate the narcotic drugs traffic within its borders," affirmed the power of a state to "impose criminal sanctions" against unauthorized "possession of narcotics within its borders," 370 U.S. at 664, 82 S.Ct. at 1419—without drawing an exception for addicts—and emphasized that it was dealing "only with an individual provision of a particularized local law as it has so far been interpreted by the California courts." 370 U.S. at 668, 82 S.Ct. at 1421.

Even if the record had contained much more information concerning the nature and extent of Swanson's addiction than it does and had disclosed that no method of medical treatment was available,[3] we would be loath to construe Robinson as condemning the provision of the Connecticut statute here in question. If a state cannot constitutionally make self-administration of narcotics by an addict a crime, even for a person who voluntarily became one, cf. Model Penal Code §§ 2.08(4) (self-induced intoxication); 2.09(2) (duress caused by carelessness); contrast 370 U.S. 667 n. 9, 82 S.Ct. 1417 (addiction in newborn children), there would hardly be basis for a different view as to statutes punishing "purchase," "possession," "transportation" or "use" of the drug where these were solely preliminaries to self-administration by such an addict. On such a construction Robinson would require the courts to impose many exceptions both on state narcotics acts and on the familiar 21 U.S.C. § 174, as well as on statutes condemning the purchase, possession, transportation or use of other addicting drugs or of alcohol.

■ We are unable to believe that a decision stated by the Supreme Court to be limited to "a particularized local law as it has so far been interpreted" by the local courts was meant to prevent all state legislatures and Congress from de-

termining, if they see fit, that the self-administration of narcotics or other noxious substances, and attendant purchase or possession, involve such dangers to their users, such potential of creating new addicts, and such other harmful social by-products, that proof of strong emotional or even of physiological compulsion shall not be a defense. We are well aware of the serious difference of opinion concerning the wisdom of anti-narcotics legislation seemingly so harsh as Connecticut's. But the very lack of an agreed solution argues against judicial interposition rather than for it. If Connecticut's legislature, after full consideration, has decided that in order to stamp out the horrors of the narcotics traffic or to prevent its spread, it is desirable to attempt to deter actual and potential addicts by the knowledge of liability to imprisonment if they administer drugs to themselves, that is a choice the Constitution permits to be made "in the insulated chambers afforded by the several States," Truax v. Corrigan, 257 U.S. 312, 344, 42 S.Ct. 124, 134, 66 L.Ed. 254 (1921) (dissenting opinion of Mr. Justice Holmes). An inferior federal court should not reassume in this controversial area the mantle of judicial omniscience long since discarded as to social and economic legislation. See Rochin v. California, 342 U.S. 165, 168, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

■ We realize that the Robinson opinion relied on the Eighth Amendment's prohibition of cruel and unusual punishment, held applicable to the states under the Fourteenth. But what was considered to have made the punishment in that case—90 days' confinement plus a two-year parole, 370 U.S. at 682, 82 S.Ct. 1417—cruel and unusual, was not that the punishment was severe but that no crime had been committed. On that view "even one day" would have been too much. 370 U.S. at 667, 82 S.Ct. 1417. If Connecticut can constitutionally make

---

3. Five months after Swanson's arrest, Connecticut enacted legislation for the care of addicts expressly including a provision for voluntary treatment. See §

19–268g, enacted by Conn.Pub.Acts 1964, No. 647. The law as it existed at Swanson's arrest is less easy to decipher from the statutes alone. See § 17–185.

**264**

self-administration of narcotics a crime even for an addict, neither the provision of § 19–265a permitting sentence up to five years nor the particular sentence imposed on Swanson was a cruel or unusual punishment. One need only read Mr. Justice McKenna's eloquent opinion in Weems v. United States, 217 U.S. 349, 365–367, 30 S.Ct. 544, 54 L.Ed. 793 (1910)—the only other instance of Supreme Court condemnation of a prison sentence under the Eighth Amendment—to realize how different this case is.

We wish to express our appreciation to Charles D. Gill, Esq., assigned counsel, for a fine brief and argument on Swanson's behalf.

Affirmed.