409 F.2d 1016
 UNITED STATES of America ex rel. Wilbert ROSS, Relator-Appellant,
v.
Daniel McMANN, as Warden of Clinton Prison, Dannemora, New
York, Respondent-Appellee.
UNITED STATES of America ex rel.
Foster DASH, Petitioner-Appellant,
v.
The Hon. Harold W. FOLLETTE, Warden of Green Haven State
Prison, Stormville, New York, Respondent-Appellee.
 Nos. 492, 540, Dockets 32140, 30420.
 United States Court of Appeals, Second Circuit.
 Submitted to the Court in banc Oct. 17, 1968.
Decided Feb. 26, 1969.
 
 United States ex rel. Ross v. McMann was argued May 9, 1968 before LUMBARD, Chief Judge, and J. JOSEPH SMITH and ANDERSON, Circuit Judges.
 United States ex rel. Dash v. Follette was argued on June 21, 1968 before MOORE and FRIENDLY, Circuit Judges, and BRYAN, District Judge.
 Since similar issues of importance in determining state prisoner habeas corpus applications were involved in these cases, and in No. 32264, United States ex rel. Rosen v. Follette, 409 F.2d 1042 the court on October 17, 1968 ordered the three cases considered in banc.
 Appeal in United States ex rel. Ross v. McMann from judgment of the United States District Court for the Eastern District of New York, Walter Bruchhausen, Judge, dismissing without hearing application of state prisoner for writ of habeas corpus. Reversed and remanded.
 Thomas D. Barr, New York City (Duane W. Krohnke, New York City, on the brief), for relator-appellant.
 Joel Lewittes, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.
 Appeal in United States ex rel. Dash v. Follette from order of the United States District Court for the Southern District of New York, John M. Cannella, Judge, denying without hearing petition of state prisoner for writ of habeas corpus. Reversed and remanded.
 Gretchen White Oberman, New York City (Anthony F. Marra, New York City, on the brief), for petitioner-appellant.
 Mortimer Sattler, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.
 Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.
 
 
 1
 J. JOSEPH SMITH, Circuit Judge (with whom WATERMAN, IRVING R. KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges, concur):
 
 I.
 
 2
 United States ex rel. Ross v. McMann is an appeal from a dismissal without hearing of an application by a state prisoner for writ of habeas corpus in the District Court for the Eastern District of New York, Walter Bruchhausen, Judge. Relator, confined in a New York State prison for a term of 45 years to life on conviction upon plea of guilty to murder in the second degree, petitioned the Supreme Court of the State of New York for Kings County for a writ of error coram nobis on the ground that his guilty plea was induced by coerced confessions. The writ was denied without a hearing, the decision affirmed without opinion by the Appellate Division, People v. Ross, 26 A.D.2d 773, 272 N.Y.S.2d 969 (2d Dept. 1966) and leave to appeal denied by the New York Court of Appeals.
 
 
 3
 The District Court entertained the application for writ of habeas corpus, and dismissed the petition without a hearing on the ground that 'a voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings against him,' relying on United States ex rel. Glenn v. McMann, 349 F.2d 1018 (2 Cir. 1965), cert. denied 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966). In his complaint and supplemental affidavit Ross alleges that he pleaded guilty because his attorney had refused to attempt to suppress a confession which had been illegally obtained from him and had warned him that if he risked a trial, the confession and other evidence against him would surely lead to his conviction for first degree murder and sentence to the electric chair.[1] We hold that these allegations raise a sufficient question as to the voluntariness of the plea of guilty to require a hearing before the issue is determined.
 
 
 4
 On the record before us, it appears that Ross has sufficiently raised his present claims in the state courts to satisfy the requirement of exhaustion of state remedies. On oral argument, however, it was represented that a second petition by Ross for relief by writ of error coram nobis has been brought to and is pending in the state courts. If this is determined by the District Court to be the fact, that court may defer hearing in this matter pending final determination of the action in the state courts. And, if hearing is had on the issue in the state courts, the District Court may find further hearing before it unnecessary to its determination of the merits. We reverse and remand to the District Court for further proceedings not inconsistent with this opinion.
 
 
 5
 This case raises the narrow question whether a District Court should apply the standards of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), in determining whether to hold an evidentiary hearing upon a habeas corpus petition where the petitioner is confined after a plea of guilty and is contending that the plea was not voluntary, because it was induced by the existence, or threatened use, of an allegedly coerced confession.
 
 
 6
 It is clear, first of all, that a plea of guilty, even where the defendant is represented by counsel, is not an absolute bar to collateral attack upon a conviction. Waley v. Johnston, Warden, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942). Cf. Pennsylvania ex rel. Herman v. Claudy, Warden,350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126 (1956). (In Herman, petitioner did not have benefit of counsel.) Wee also Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962): 'A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack.' To paraphrase Harrison v. United States, 392 U.S. 219, 223, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), 'The question is not whether the petitioner made a knowing decision to (plead) but why.' Nor is the mere existence of a coerced confession enough to invalidate a later guilty plea by a defendant represented by counsel.
 
 
 7
 The question to be answered in any case involving a collateral attack on a conviction based upon a plea of guilty is usually expressed in terms of whether or not the plea was a 'voluntary' act. (An 'involuntary' plea of guilty is inconsistent with due process of law, see Waley v. Johnston,supra, 316 U.S. at 104, 62 S.Ct. 964, and thus invalid whether made in federal or state court.) And Townsend v. Sain, supra, 372 U.S. at 312-313, 83 S.Ct. 745, requires that where the petitioner in such a case has not received a 'full and fair evidentiary hearing' in a state court as to the voluntariness of the plea, a hearing be held in the federal District Court.
 
 
 8
 The question of when to hold a hearing has apparently been complicated in this Circuit, however, by confusion between the doctrine that an involuntary guilty plea may be collaterally attacked and the well-established doctrine that if the plea is voluntary, it is an absolute waiver of all non-jurisdictional defects in any prior stage of the proceedings against the defendant.
 
 
 9
 Judge Weinfeld said in United States v. Colson, 230 F.Supp. 953, 955 (S.D.N.Y.1964), 'The determination of the ultimate question of whether the defendant, at the time he pled guilty, had the free will essential to a reasoned choice, rests upon probabilities and, of course, cannot be resolved with mathematical certainty. It involves an evaluation of psychological and other factors that may reasonably be calculated to influence the human mind. * * * It is necessary to consider the plea of guilty against the totality of events and circumstances which preceded its entry.' The determination is difficult, but it is not necessarily rendered more difficult simply because a coerced confession or an illegal search and seizure is one of the factors which may be taken into account.
 
 
 10
 In the case at bar, the court, relying on Glenn, found it unnecessary to make such a determination. This, we think, resulted from a too expansive reading of Glenn. The opinion in Glenn may be read either of two ways: (1) the allegation of a coerced confession, without more, is not sufficient to raise the issue of the voluntariness of a guilty plea; or (2) an unconstitutionally coerced confession is never relevant to the issue of the voluntariness of a guilty plea. The first, more narrow reading, seems to us to state the proper rule. But the second reading (the much more likely meaning of the opinion despite the use of the word 'voluntary,' in view of the allegation that the plea was coerced by the existence of an involuntary confession) confuses the doctrine that an involuntary guilty plea may be collaterally attacked with the doctrine that if it is voluntary, a guilty plea waives prior defects in the proceedings against the defendant.
 
 
 11
 The court relied on two cases in Glenn: United States ex rel. Swanson v. Reincke, 344 F.2d 260 (2 Cir.), cert. denied 382 U.S. 869, 86 S.Ct. 144, 15 L.Ed.2d 108, 1965 and United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2 Cir. 1965). Neither of those cases holds that the waiver rule should operate to make an invasion of the defendant's Constitutional rights irrelevant to the issue of the voluntariness of the guilty plea.
 
 
 12
 In Swanson, this court affirmed the denial of relief in a habeas corpus proceeding challenging the constitutionality of the statute under which petitioner had been convicted, where a hearing had been held below. There is language in the court's opinion refusing to rest affirmance on the ground that a plea of guilty should bar collateral attack. In discussion of that issue, 344 F.2d at 261-262, it was said:
 
 
 13
 The cases most nearly in point but by no means exactly so concern guilty pleas proper in other respects, such as right to counsel, but lodged after the police had obtained evidence in violation of constitutional rights; a number of circuits have said such guilty pleas are not subject to attack (citing cases), even when induced by that evidence (citing cases).[2]
 
 
 14
 In Boucher, the other case cited in Glenn, the petitioner sought to attack his conviction based upon a guilty plea. After stating the waiver rule, this court said:
 
 
 15
 To circumvent the effect of the guilty plea as a waiver, the petitioner asserts that his plea was induced by inadequate representation by counsel and by the fear that unconstitutionally obtained evidence would be used at his trial.
 
 
 16
 341 F.2d at 981. The opinion then goes on to explain how the petitioner's representation by counsel had been entirely competent, there were no circumstances indicating an illegal search and seizure, and 'There is not a shred of evidence that anyone induced him to plead guilty and the court concluded 'it was made freely, voluntarily and intelligently." A hearing was held in Boucher.
 
 
 17
 The meaning of the rule was also left somewhat uncertain by a per curiam opinion in United States ex rel. Martin v. Fay, 352 F.2d 418 (2 Cir. 1965), cert. denied Martin v. Follette, 384 U.S. 957, 86 S.Ct. 1581, 16 L.Ed.2d 552 (1966). There, a denial without a hearing of an application for habeas corpus was affirmed, where appellant claimed, interalia, that he pleaded guilty because a coerced confession had been obtained from him. The court said: 'An examination of the facts and circumstances surrounding the taking of the plea convinces us that the plea was made voluntarily, the colloquy between the sentencing judge and appellant being decisive.' The court then cited the waiver rule, as stated in Glenn, along with a 'see also' citation to Swanson and Boucher. Judge Waterman concurred on the ground of failure to exhaust state remedies, and stated that he thought the court had made an ambiguous use of the word 'voluntary,' since although the petitioner had not demonstrated that a hearing would prove his allegation that his guilty plea was 'required by an alleged prior forced confession,' 'Nevertheless, I can conceive of situations in which a plea of guilty upon the advice of counsel would have been caused by circumstances entitling the defendant to challenge his own act on the ground it was a compelled act.' 352 F.2d at 419.
 
 
 18
 We have in other cases also used language inconsistent with the District Court's reading of Glenn here. In United States ex rel. Siebold v. Reincke, 362 F.2d 592 (2 Cir. 1966), a denial of a petition for a writ of habeas corpus was affirmed per curiam on the ground that 'the hearing before the District Court indicated that petitioner's guilty plea was not the result of unconstitutionally obtained evidence.' 362 F.2d at 593. In the course of the opinion, it was noted that 'A conviction will not be sustained if it rests upon a plea of guilty which is the result of coercion, nor, perhaps, if the plea of guilty resulted from other violations of constitutional rights,' citing Vaughn, supra, (United States ex rel. Vaughn v. LaVallee, 318 F.2d 499 (2d Cir. 1963)), and United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 311 (2 Cir. 1963). Neither Glenn nor Martin was mentioned. In McGrath, the court split three ways (for no hearing, a hearing and outright granting of a writ of habeas corpus) in a case where petitioner contended that his guilty plea had been involuntary-- the claim of coercion was based upon what the trial judge said to the petitioner just before the guilty plea was entered.
 
 
 19
 The rule should be stated as follows: Where a petition for habeas corpus raises a claim that a guilty plea was not voluntary, the standards of Townsend v. Sain are applicable in determining whether to hold a hearing; and although the waiver rule means that an allegation that the petitioner's constitutional rights were violated before the plea was taken is not, standing alone, sufficient to call the validity of the plea into question, nonetheless if it is alleged that the plea was coerced in a manner spelled out in the petition, the alleged violations are not irrelevant to the issue of the voluntariness of the plea. An alleged violation of constitutional rights is simply another factor to be taken into account in determining the voluntariness of the plea.
 
 
 20
 On the other hand, the fact that the petitioner was represented by counsel and acted after consultation with counsel is also to be given substantial weight in determining the issue of voluntariness of plea.
 
 
 21
 From and after Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the state and federal courts have stressed the value and necessity of providing an accused with counsel because, except in the very few cases of inadequate representation, the professional skill and judgment of the attorney, exercised on his client's behalf, affords the accused protection of his rights. The role of the attorney in advising a plea of guilty should not, therefore, be ignored. Even where there is evidence that a confession has been coerced, there may be factors which would justify counsel for the accused, once a fair hearing by the state court has been held on a motion to suppress the confession and suppression has been denied, to advise a plea of guilty. Therefore, a mere conclusory allegation by a prisoner without more, that the existence of a coerced confession induced his guilty plea, in the absence of any particularized allegations as to how that confession rendered his plea involuntary, should not ordinarily be considered sufficient to predicate an order for a hearing.[3] See United States ex rel. White v. Fay, 349 F.2d 413 (2 Cir. 1965); United States ex rel. Homchak v. New York,323 F.2d 449 (2 Cir. 1963), cert. denied 376 U.S. 919, 84 S.Ct. 677, 11 L.Ed.2d 615 (1964).
 
 
 22
 The rule we have set out is apparently consistent with the views of at least the Third, Fifth, Sixth, Seventh, and Ninth Circuits. See United States ex rel. Collins v. Maroney, 382 F.2d 547 (3 Cir. 1967) (per curiam); Smith v. Wainwright, 373 F.2d 506 (5 Cir. 1967); cf. Carpenter v. Wainwright, 372 F.2d 940 (5 Cir. 1967), a stronger case for the petitioner; Reed v. Henderson, 385 F.2d 995 (6 Cir. 1967), dictum: 'Appellant apparently attempts to circumvent the waiver attending the plea of guilty by claiming that the plea was involuntary in that it was the product of, or induced by, certain coerced admissions which had been obtained from him by the police. That this may be a ground for habeas corpus relief appears to be well settled,' 385 F.2d at 996; Shelton v. United States, 292 F.2d 346 (7 Cir. 1961), cert. denied 369 U.S. 877, 82 S.Ct. 1149, 8 L.Ed.2d 280 (1962); Doran v. Wilson, 369 F.2d 505 (9 Cir. 1966).
 
 
 23
 To sum up: Glenn says, in effect, that a 'voluntary' plea of guilty wipes out all prior invasions of the defendant's constitutional rights. Whether that is correct or not depends on the meaning of 'voluntary'; it must be recognized that a prior invasion of the defendant's rights, even if not sufficient after the taking of the plea to overturn the conviction, may still be entirely relevant to the issue of the plea's voluntariness. The problem is that Glenn, together with Martin, is sometimes being read by the District Courts to say that a coerced confession or other violation of a defendant's rights is never relevant to the issue of voluntariness, and in these cases the District Courts are relying upon representation by counsel and proper questioning by the judge at the plea taking to establish voluntariness without more, even where the allegations of the habeas corpus petition raise questions which cannot be answered by reference to the transcript alone.
 
 
 24
 This court has recently discussed the reasons why the voluntary guilty plea constitutes a waiver of all non-jurisdictional defects, United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 at 213 (2 Cir. 1967):
 
 
 25
 There is nothing inherent in the nature of a plea of guilty which ipso facto renders it a waiver of a defendant's constitutional claims. Rather, waiver is presumed because ordinarily such a plea is an indication by the defendant that he has deliberately failed or refused to raise his claims by available state procedures; therefore, principles of comity and the interests of orderly federal-state relations require that he should not be allowed to present these claims to the federal courts.
 
 
 26
 A distinguishing feature of the present case, however, is that the only available state procedure by which he could contest the validity of the confession was the one declared retroactively unconstitutional in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This is even more damaging to an accused than the lack of a right to appeal the intermediate order denying the Fourth Amendment motion to suppress in Rogers, supra, 381 F.2d at 214.
 
 
 27
 Faced with that hazard as his only alternative recourse, made particularly perilous in the context of the first degree murder charge with a possible death penalty, the decision of the accused, on advice of counsel, to plead guilty to second degree murder might well be held to have been involuntary. The petitioner cannot be deemed to have waived his coerced confession claim by deliberately by-passing state procedures when the state failed to afford a constitutionally acceptable means of presenting that claim, and he cannot be deemed to have entered a voluntary plea of guilty if the plea was substantially motivated by a coerced confession the validity of which he was unable, for all practical purposes, to contest.
 
 
 28
 The judgment is reversed and the case remanded with instructions to hear and determine petitioner's application unless a hearing is held by the courts of the state determining under the standards set forth herein the issue of the voluntariness of petitioner's plea[4] within 60 days from the date of issuance of the mandate herein, or such further time as the District Court may for good cause allow.
 
 II.
 
 29
 Turning to United States ex rel. Dash v. Follette, Foster Dash was sentenced on August 3, 1959, in the New York state courts on plea of guilty to a charge of robbery second degree, to imprisonment for a term of 8 to 12 years as a second felony offender. Dash sought release by writ of error coram nobis on the ground that a false confession was obtained from him after indictment in violation of his right to counsel, and that his plea of guilty was induced by advice of counsel that the confession would negate any chance of acquittal and by a threat by the trial judge that he would receive the maximum possible sentence if he went to trial and was found guilty. The writs were denied without hearing, and the orders affirmed by the Appellate Division (People v. Dash, 21 A.D.2d 978, 252 N.Y.S.2d 1016) and by the Court of Appeals (16 N.Y.2d 493, 260 N.Y.S.2d 437, 208 N.E.2d 171 (1965)), two justices dissenting.
 
 
 30
 Petitioner then applied for writ of habeas corpus, alleging similar grounds, in the United States District Court for the Southern District of New York. The Court, John M. Cannella, J., denied the application, relying principally on United States ex rel. Glenn v. McMann, supra, United States ex rel. Swanson v. Reincke, supra, and United States ex rel. Boucher v. Reincke, supra,[5] and petitioner appeals. We reverse and remand with instructions.
 
 
 31
 In this case, as in United States ex rel. Ross v. McMann, decided herewith, a state prisoner's application for writ of habeas corpus was denied without hearing, the court relying largely on United States ex rel. Glenn v. McMann, since the petitioner, represented by counsel, had pleaded guilty in the state court. Here Dash alleges coercion of his confession. (Conviction of two of his codefendants who went to trial was set aside because it was held that their confessions were coerced. People v. Waterman, 12 A.D.2d 84, 208 N.Y.S.2d 596, aff'd 9 N.Y.2d 561, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961).) He also alleges coercion of his plea, relying partly on the existence and threatened use of his coerced confession, and partly on an alleged threat by the judge to impose the maximum possible sentence if he were found guilty after a trial. The latter ground was dismissed from consideration by the judge because the report of the state court proceeding, People v. Dash, 16 N.Y.2d 493, 260 N.Y.S.2d 437, 208 N.E.2d 171 (1965), indicated that the prosecutor had filed an affidavit categorically denying that the trial judge ever threatened the defendant.
 
 
 32
 In this case, as in Ross v. McMann, the claim is made that the existence of a coerced confession, in a case determined prior to Jackson v. Denno, supra, so tainted the state court proceedings that the plea was not voluntary. For the reasons set forth in Ross v. McMann, we think the allegations here sufficient to call for a hearing on the voluntariness of the plea unless a full hearing and determination of the issue is provided in the courts of the state. As we held in Ross, 'The petitioner cannot be deemed to have waived his coerced confession claim by deliberately by-passing state procedures when the state failed to afford a constitutionally acceptable means of presenting that claim, and he cannot be deemed to have entered a voluntary plea of guilty if the plea was substantially motivated by a coerced confession the validity of which he was unable, for all practical purposes, to contest.' In these circumstances there is an issue as to the motivation of the plea which cannot be resolved without a hearing. If it was motivated by the claimed threat of the judge, or the existence and threatened use of a coerced confession, it may be found not to have been voluntary. On the other hand, if it is found that there was no such threat by the judge, and if the plea was freely made on advice of counsel because of the weight of the state's case aside from the confession, with apparent likelihood of conviction regardless of the confession, in a considered effort to obtain a lighter sentence, the court may find the plea voluntary, and the conviction unassailable.
 
 
 33
 Reversed and remanded with instructions to hear and determine petitioner's application unless a hearing is held by the courts of the state determining under the standards set forth herein the issue of the voluntariness of petitioner's plea[6] within 60 days from the date of issuance of the mandate herein, or such further time as the District Court may for good cause allow.
 
 WATERMAN, Circuit Judge (concurring):
 
 34
 I concur in the opinion for the majority of the in banc Court written by Circuit Judge J. JOSEPH SMITH.
 
 
 35
 I accept Circuit Judge IRVING R. KAUFMAN's approach in his concurring opinion, and I concur in that opinion, also.
 
 
 36
 IRVING R. KAUFMAN, Circuit Judge (concurring) (with whom WATERMAN, ANDERSON and FEINBERG, Circuit Judges, concur):
 
 
 37
 I am in full accord with my brother SMITH'S opinion.
 
 
 38
 Because we are not writing on a clean slate, and the majority accordingly came to the only conclusion open to it in Ross and Dash, I feel impelled to respond to the objections raised by my dissenting brothers.
 
 
 39
 Notwithstanding the caustic tones in which one of them has retorted I believe it my responsibility to set forth my views lest one believe that only the dissenters seek to protect us 'against those who have made it impossible to live today in safety' Harrison v. United States, 392 U.S. 219, 235, 88 S.Ct. 2008, 2017, 20 L.Ed.2d 1047 (1968) (dissenting opinion) and that the majority has become an ally of criminals, devoid of all interest in the community's safety and living insensitively in its ivory tower.
 
 
 40
 First, I should hardly have thought it necessary, but for my brothers' dissent, even to mention the judicial precept that the ultimate guilt or innocence of the defendants has no bearing on the issues before us. Under our system of criminal justice two indispensable conditions must be met to render valid a determination of guilt: not only must the accused actually be guilty of the crime for which he was convicted, but the procedure leading to his conviction must comport with the requirements of due process. Thus, even if we were to agree with my dissenting brother's declamation that 'Men who first confess and then, on the advice of counsel, plead guilty to serious crimes, do so because they are,' I submit that such an observation is gratuitous and irrelevant to the issue before us: whether the state procedures leading to the entry of the pleas of guilty in question were fundamentally fair in a constitutional sense.
 
 
 41
 Second, I am impelled to dissipate the impression that our decision is somehow a novel departure from established constitutional tenets. On the contrary our decisions here are absolutely required by the principles the Supreme Court has long enunciated. Thus, in Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962) the Court cautioned:
 
 
 42
 '* * * A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.' (quoting Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927)).
 
 
 43
 This instruction of the Court cannot be ignored merly because the particular facts of that case are somewhat different from those in the cases before us, or because nonessential distinctions might be spun. If we could turn our backs on a pronouncement as clear as that quoted merely because the facts in the case under consideration may not be on all fours, no precept or ratio decidendi of the Supreme Court would have any force. It does not require too much imagination to recognize that the principles and the problems we are dealing with are the same. Machibroda mandated that, because of the extreme gravity of a guilty plea, in all cases where a conviction based upon such a plea is attacked we must carefully and conscientiously consider the surrounding circumstances to determine whether is was properly and voluntarily made. And since Machibroda itself involved a collateral attack on a conviction based upon a guilty plea we cannot, as one of my dissenting brothers suggests, ignore the applicability of this mandate to other cases where post conviction attacks are made on the propriety of the guilty pleas merely because they come 'long after the defendant has gotten the benefit of his bargain.'
 
 
 44
 Moreover, in Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 118, 76 S.Ct. 223, 224, 100 L.Ed. 126 (1956), the Court further instructed:
 
 
 45
 '* * * (A) conviction following trial or on a plea of guilty based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause.'
 
 
 46
 While the petitioner in Herman alleged a more aggravated deprivation of rights than appears in the cases before us, such a distinction is not compelling. Although the court was dealing with a greater degree of contamination, I do not read Herman as preaching a doctrine that the taint must reach only the gradations found there before one may claim the pleas were induced by fundamentally unfair procedures. If the Supreme Court had intended to limit the holding to the precise facts in that case it would have done so explicitly, or at least by intimation, a course it has followed in so many other cases where it desired to achieve such a limited goal. When instead the court enunciated a clear, unqualified, and unequivocal principle of general applicability, we, as an inferior court, are duty bound to regard it as governing in analogous cases presenting the same question of law. My brother Friendly made the point when he said in another context, 'Our duty as an inferior federal court is to apply, as best we can, the standards the Supreme Court has decreed * * *.' United States v. A Motion Picture Film Entitled 'I Am Curious-- Yellow,' 404 F.2d 196 (2d Cir. decided November 26, 1968) (concurring opinion) at 200 (holding the film not obscene), whether or not we would make the same pronouncements if free to do so.
 
 
 47
 Judges must be careful lest their personal predilections lead them to ignore the constitutional requirements set forth by the Supreme Court, by indulging in sophistic games of distinction-making because they do not approve of the Court's constitutional determinations. In this instance we are buttressed in our interpretation of Herman, which one of my dissenting brothers pansophically dismisses as 'a dismal failure,' by the knowledge that many other federal circuit courts have also 'failed' and read Herman precisely as we have. E.g., Reed v. Henderson, 385 F.2d 995, 996 (6th Cir. 1967); Smiley v. Wilson, 378 F.2d 144, 148 (9th Cir. 1967); Bell v. Alabama, 367 F.2d 243, 246 (5th Cir. 1966), cert. denied 386 U.S. 916, 87 S.Ct. 859, 17 L.Ed.2d 788; Jones v. Cunningham, 297 F.2d 851, 855 (4th Cir. 1962), cert. denied 375 U.S. 832, 84 S.Ct. 42, 11 L.Ed.2d 63 (1963). Indeed, in United States ex rel. Vaughn v. LaVallee, 318 F.2d 499 (2d Cir. 1963), apparently overlooked, my able brother Lumbard endorsed Herman when, citing that case, he remarked 'A plea of guilty which is prompted by fear that unconstitutionally obtained evidence will be used at trial will not sustain a conviction.' 318 F.2d at 499.
 
 
 48
 Not only is the result of the majority following the only course left open to a lower court by the Supreme Court, but it is sound because, as the law must, it comports with the realities of the situation. Consider for a moment the paradigm, where the prosecution has no other evidence against the defendant but the confession which it illegally obtained from him, and where, as in Ross and Dash, the defendant has no adequate means of challenging the confession prior to his trial. Under these circumstances it would be nothing less than fantasy for us to say that the existence of the confession could not have substantially motivated the plea. And if, in the more common case, the determination is more difficult because the prosecution also has other evidence against the defendant, I do not believe that such difficulty releases us from the obligation to consider the possibility that the existence of the confession had a substantial motivational effect. In reality we can never, as my brothers urge, escape deciding these cases, as distasteful as it might be. By refusing to consider them individually we merely decide they should all come out the same way-- an approach hardly commendable or likely to reach a just result in those cases worthy of consideration.
 
 
 49
 Moreover, once we face up to the realities of the situation, the fundamental fallacy of my dissenting brothers' argument-- that no coercion or untoward pressure of the state caused these pleas-- becomes apparent. The state allegedly illegally obtained the confession from the defendant and the state denied him any adequate means of suppressing it prior to trial. How the state can then be transformed into a disassociated neutral observer when defendant pleads guilty because of that confession is too metaphysical for my comprehension. Once it has thus unfairly placed the defendant in an inherently coercive situation, I do not understand our solicitude for the state's claim that all pleas of guilty must under any and all circumstances be final, absolute and beyond judicial instruction.
 
 
 50
 Moreover, I must emphasize that, as the majority indicates in Ross we are by no means the first or only circuit to reach this result. Particularly in the Fourth Circuit, e.g., White v. Pepersack, 352 F.2d 470, 472 (1965); Jones v. Cunningham, supra; the Fifth Circuit, e.g., Bell v. Alabama, supra; and the Ninth Circuit, e.g., Smiley v. Wilson, supra; Doran v. Wilson, 369 F.2d 505 (1966), the rule my dissenting brothers view as so novel and indeed unprecedented-- that a guilty plea induced by the existence of an illegally obtained confession cannot stand-- is well established law. And, we long ago embarked on the trying course of reviewing state convictions because the Supreme Court so decreed. See e.g., United States ex rel. Caminito v. Murphy, 222 F.2d 698 (2d Cir. 1955), cert. denied, 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788; United States ex rel. Wade v. Jackson, 256 F.2d 7 (2d Cir. 1958), cert. denied, 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158; United States ex rel. Corbo v. LaVallee, 270 F.2d 513 (2d Cir. 1959), cert. denied, 361 U.S. 950, 80 S.Ct. 403, 4 L.Ed.2d 382 (1960); where we found confessions coerced, despite jury findings to the contrary which had been accepted by New York Courts.
 
 
 51
 Finally, it would, in my view, be the rankest unfairness, and indeed a denigration of the rule of law, to recognize the infirmity of the pre-Jackson v. Denno procedure for challenging the legality of a confession in the case of prisoners who went to trial but to deny access to the judicial process to those who improperly pleaded guilty merely because the state would have more difficulty in affording a new trial to them. Nor do I believe that we are free to refuse to consider a valid claim for a hearing because the separation of meritorious claims from those of no merit is difficult. This 'difficult' task is faced daily be judges; to avoid it by throwing out all petitions-- even meritorious ones-- because the chore is onerous would be an abdication of our judicial duty. The Supreme, court clearly stated in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) that where a state prisoner alleges facts which, if proved, would entitle him to relief, he must be afforded a federal hearing on his habeas petition, where he has not received an adequate state hearing on the issue. And the Court has also held, repeatedly and emphatically, that where petitioner's allegations present an issue of fact not refuted by the files and records, we cannot deny him a hearing merely because his allegations are improbable. Machibroda v. United States, 368 U.S. 487, 494, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Waley v. Johnston, 316 U.S. 101, 102, 104, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); Walker v. Johnston, 312 U.S. 275, 285, 61 S.Ct. 574, 85 L.Ed. 830 (1941).
 
 
 52
 Although our decisions may encourage some prisoners to file petitions wholly devoid of merit, the short answer to this is that most advances in the law have been subject to abuse. But, if this were to deter courts from doing what should be done, the law would remain stagnant. Nor, do I share the belief that the mere filing of such petitions will overwhelm our experienced district judges. The trained judge's eyes can quickly sift out those not deserving of a hearing. It was not much of a task for the district judge and this Court to do just that with Rosen's petition. Indeed, the statistics of the Administrative Office of the United States Courts reflect that hearings in state habeas corpus cases between 1966 and 1968 have been granted in only about 8% Of the approximately 5000 to 6000 applications filed each year during that period.[1] Moreover, we must not overlook the fact that pleas in the post-Jackson v. Denno era will not be affected by our ruling.
 
 In any event, we have already recognized:
 
 53
 'There is an understandable tendency to try to avoid hearings * * * where it appears that there is little merit in the petition, and that hearing might well be of no avail to the petitioner. With the crowded dockets and delay caused by a heavy judicial workload, a diligent judge, out of concern for our goal of speedy justice, may well overlook the fact that a particular application alleges sufficient particulars to require a hearing. Our concern for efficiency must not outweight our concern for individual rights. We cannot refuse a hearing because hearings generally show that there is no real basis for relief, or even because it is improbable that a prisoner can prove his claims.' United States v. Tribote, 297 F.2d 598, 603-604 (2d Cir. 1961).
 
 
 54
 A court of law whose function it is to guard against injustice cannot refuse access to those properly invoking its process merely because it must also deal with others who cry wolf too often.
 
 
 55
 Accordingly, I believe that when, as in Ross and Dash, a petitioner alleges facts sufficient to support his claim that his guilty plea was substantially induced by the existence of a confession illegally obtained from him which he had no adequate means of challenging, and his allegations are not controverted by the record, we cannot avoid our duty-- time consuming as it may be-- to grant him a hearing. Of course, we are not suggesting for a moment that the writ should be sustained after such hearing. The petitioner must carry the durden of establishing that the coerced confession substantially motivated him in pleading guilty. Thus, we are a long way from the house of horrors which the dissenting opinions suggest would confront us if a reprosecution were ordered. We do no more today than to determine that all petitions cannot be thrown out without regard to their merits merely bacause 'no certain answers' can be given with the precision of a mathematical equation-- a condition which the dissenters would seem to require. If this test had validity no court would ever inquire into the voluntariness of a plea of guilty or the voluntariness of a confession, for voluntariness is a purely subjective action and never can 'certain answers' be given by the fact finder. One of my dissenting brothers recognizes that 'Absent some credible and detailed proof to the contrary, we must assume that (defendant's) interests have been protected, and that pleas of guilty would not have been offered without substantial basis for believing (they) were guilty * * *.' Ross and Dash merely ask for the chance to give this proof at a hearing, which I cannot find any sound basis for denying in light of the allegations in their petitions.
 
 ANDERSON, Curcuit Judge (concurring):
 
 56
 I concur in the opinions of Circuit Judges J. JOSEPH SMITH and IRVING R. KAUFMAN.
 
 FEINBERG, Circuit Judge (concurring):
 
 57
 I concur in the opinions of Circuit Judges J. JOSEPH SMITH and IRVING R. KAUFMAN.
 
 
 58
 LUMBARD, Chief Judge (dissenting) (with whom Circuit Judges MOORE and FRIENDLY concur):
 
 
 59
 I would affirm the denials by the district courts of the petitions of these two state prisoners, Wilbert Ross and Foster Dash, for writs of habeas corpus.
 
 
 60
 In my opinion, these cases are governed by United States ex rel. Glenn v. McMann, 349 F.2d 1018 (2d Cir. 1965), which held that 'a voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings.' The conclusion that the guilty pleas in both of these cases were entered knowingly and without coercion is, to my mind, inescapable.
 
 
 61
 In each of these cases the state prisoner was represented by counsel long prior to the plea of guilty and there was adequate time for full consideration of the case by the defendant and his counsel. Furthermore, it is apparent that the pleas were motivated by knowledge that the state had substantial evidence in addition to any confession it may have had from the defendants. In sum, it is altogether clear that the defendants, after consulting with counsel, made an informed, deliberate and voluntary choice that their interests would be best served by pleading guilty to a lesser degree of the crime charged and by the likelihood that the sentence the judge would impose would be less than if they were to stand trial and be convicted.
 
 
 62
 Nor do I think that Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), should be applied to require a hearing in plea of guilty cases to determine whether the existence of the allegedly involuntary confession 'coerced' the plea of guilty or whether the plea was taken for other reasons. I would confine Jackson v. Denno to cases where New York used the confession at trial, over objection that it was coerced, at a time when New York failed to provide a means of testing such objection prior to trial; it should not be given retroactive effect to cases where defendants pleaded guilty.
 
 
 63
 To say that a hearing might show these pleas to have been 'involuntary' because they were induced by the fact that New York law, at the time of the pleas, provided that the voluntariness of confessions which the petitioners claim they made would be tested by the jury, is to indulge in profitless speculation and to embark upon an inquiry where no certain answers are possible. Even the holding of hearings in such cases will impose upon New York's judicial system, and in corresponding degree on the Federal system, a substantial burden and needlessly consume the time of assigned counsel, law enforcement officers, prosecutors, those judges who accepted the pleas and those judges who must now take time to hold the hearings.
 
 
 64
 For many years these cases had been concluded and forgotten. How can it be supposed more than 13 years after Ross' plea of guilty to second degree murder that there can be any reliable reconstruction of what the prosecution and defense knew about the nature and weight of the evidence available in 1955, or about the facts relevant to the 'confession' and the state of mind of Ross at the time he pleaded guilty? While Ross has had time in prison to store up memories and imagine what happened in May 1954, when the murder occurred, and in 1955, when he pleaded guilty, the state's files of the case have been stored away and must be found if they can be. The prosecutor will have little, if any, memory of the case apart from what the file may disclose, and Ross' counsel, if he be available, may no longer have any files or any memory about the matter whatsoever.
 
 
 65
 Slim as are the chances of any reliable reconstruction of the situation as it bears on the 1955 plea, even slimmer are the chances of again prosecuting the case should the judgment of conviction based upon the plea of guilty be set aside. The witnesses available in 1955 may no longer be available; and even if they are available they could hardly be expected to have any trustworthy memory of events in May 1954. Almost certainly, since there was no trial of the action,[1] none of the witnesses gave testimony in such form that it could be used now in the event that they cannot be located.
 
 
 66
 Of course, the petitioners will testify concerning their claims in the light of their present state of mind with their imaginations prodded and guided by recent court decisions, including the majority opinion here, which point out the facts which will support a petition.
 
 
 67
 Settling cases on pleas of guilty is the means whereby the state and the defendants concerned dispose of about 80% Of all charges of serious crime and about 95% Of all convictions of such crimes. Of course in all such cases defendants are represented by counsel and, almost without exception, this had been the practice in the State of New York for many years prior to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). It is a system which is advantageous to all the parties concerned; it saves an enormous amount of itme for law enforcement officers and prosecutors; almost always it virtually guarantees the defendant a lesser penalty, usually on lessor and fewer charges;[2] it frequently makes possible the prosecution or disposition of charges against other persons; it enables the judges and courts to handle many times the volume of cases which could be processed were trial required in every case.
 
 
 68
 If a defendant's decision to plead guilty can be attacked and placed in jeopardy many years later, the state will have been deprived of a substantial part of the benefit which it properly and fairly thought it should enjoy-- namely, achieving a sure and certain result and saving considerable time and expense. Once the court has accepted the plea and imposed sentence there is nothing which the state can do to reopen it. The charges which have ben dismissed and disposed of are finally settled forever. Absent any fraud or overreaching existing at the time of the plea, the same rule should apply with respect to the defendant's right to reopen the case. The people cannot benefit from any subsequent change in the law and the defendant should have no right to reopen the proceedings years later because some different procedure has been created by judicial decision.
 
 
 69
 The interest in finality is particularly important in this area because of the great percentage of convictions based upon pleas of guilty. As shown by the chart below, about 95% Of all New York State indictments resulting in conviction are disposed of by pleas of guilty; in other words, for every conviction obtained after trial, 19 convictions are obtained by guilty pleas.
 
 
 70
 DISPOSITION OF INDICTMENTS IN NEW YORK STATE
 (excluding youthful offender cases)[3]
 Disposition
 by Total
 dismissal, convictio- % of % of
 ns
 discharge (after total total
 on own trial convictions convict- convict-
 ions ions
 Year Total recognizance, and by by based on based on
 ending disposi- and guilty guilty guilty guilty
 tions
June 30,[4] aquittal plea) plea plea plea
-------------------------------------------------------------------------------
1963 18,711 3,288 15,423 14,655 95.0% 78.3%
1964 17,619 2,445 15,174 14,413 94.9% 81.8%
1965 16,421 2,188 14,233 13,501 94.8% 82.2%
1966 17,447 2,204 15,243 14,482 95.0% 83.0%
1967 18,029 2,701 15,328 14,461 94.3% 80.2%
Total
1963-1967 88,227 12,826 75,401 71,512 94.8% 81.0%
 
 
 71
 Were there any reason to suppose that injustice has resulted from the taking of pleas of guilty in New York courts in cases where prisoners, represented by counsel, had confessed, further inquiry would at least be justified. But no such suggestion has been justified; no cases of injustice are cited and so far as I am advised there have been no such cases. For many years New York State has provided counsel in all cases where serious crime is charged and the defendant is unable to retain counsel. Absent some credible and detailed proof to the contrary, we must assume that defendants have been properly advised by their counsel, that their interests have been protected, and that pleas of guilty would not have been offered without substantial basis for believing that the defendants were guilty in fact and guilty in law.[3]
 
 
 72
 For these reasons I find no justification in questioning these pleas of guilty in the light of the claims the petitioners have made here. Nor do I find anything in any decision of the Supreme Court which requires a Federal court to hold a hearing on such claims. In Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), the claim was that the court had not made proper inquiry regarding the voluntary nature of the plea as required by Rule 11, Federal Rules of Criminal Procedure, and also that the plea was entered because of promises and threats of the prosecutor. The court there held that despite affidavit denials by the prosecutor, the issues of fact required a hearing. No such compelling allegations are made by Ross or Dash.
 
 
 73
 Nor does Jackson v. Denno, 378 U.S. 368, 386, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), require the district court to consider the confession claims. Jackson held that a defendant who had gone to trial, before a jury which was left to determine whether the confession admitted in evidence was voluntary, had been denied due process of law, since it was impossible to determine how the jury treated the confession. Here, however, the unconstitutionality of the pre-Jackson procedure is relevant only for its supposed impact in deterring defendants from going to trial and thereby inducing their pleas of guilty. This impact, which would be virtually impossible to determine since it requires reconstructing the defendant's state of mind, is unquestionably remote and speculative. It cannot be doubted that the existence of the pre-Jackson procedure has had a far more remote effect on the reliability of the process for determining guilt, cf. Johnson v. New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), in plea of guilty situations than it has had in cases which actually went to trial.
 
 
 74
 Nor is it accurate to say that going to trial and contesting the voluntariness of their confessions was a useless procedure for defendants who claimed that their confessions had been coerced. Since 1955 this court has carefully examined records in New York State criminal trials where such claims were made, and in some cases we have found that the confessions were coerced, despite jury findings to the contrary which had been accepted by the New York courts. See, e.g., United States ex rel. Caminito v. Murphy, 222 F.2d 698 (2d Cir. 1955), cert. denied, 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788; United States ex rel. Wade v. Jackson, 256 F.2d 7 (2d Cir. 1958), cert. denied, 357 U.S. 908, 78 S.Ct. 1152, 2 L.Ed.2d 1158; United States ex rel. Corbo v. La Vallee, 270 F.2d 513 (2d Cir. 1959), cert. denied, 361 U.S. 950, 80 S.Ct. 403, 4 L.Ed.2d 382 (1960).
 
 
 75
 For these reasons, and because of the far greater effect it would have upon the administration of justice if it were applied to plea of guilty case, I think it is clear that Jackson v. Denno should be applied retroactively only to cases which went to trial. Cf. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
 
 
 76
 There is no authority to the contrary. In the only case where this court has required a hearing involving a plea of guilty in a state court, United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir. 1963), the claim was that the trial judge had coerced the plea; there was no claim of a coerced confession.[4]
 
 
 77
 While I would affirm the denial of the prisoners' petitions for the reasons stated above, I also believe that even on principles stated in Judge SMITH'S opinion, it is clear that there is an insufficient basis to require a hearing. Therefore I proceed to discuss the facts of the two cases.
 
 Petition for Wilbert Ross
 
 78
 On February 4, 1955, when Ross pleaded guilty to murder in the second degree, he knew that one Robert Jenkins (whom he does not deny knowing) had told the police that Ross had forced him to commit the murder by threatening Jenkins' life and the life of Jenkins' wife. Ross knew this because, by means of an interoffice device, he heard Jenkins tell this to the police. At this time Ross was in jail on a charge of attempted grand larceny. Ross claims that following threats of the detectives, and after his request to consult his lawyer had been refused, he gave a statement which he signed after it had been reduced to writing. He was later questioned by an Assistant District Attorney and he signed a statement which consisted of questions and answers which had been stenographically recorded. He was not advised about an attorney and he did not ask to consult an attorney.
 
 
 79
 Ross advised the police where they could find the murder weapon and they did find it. Ross does not claim to be innocent of the murder; it is abundantly clear that he is not.
 
 
 80
 Had Ross stood trial and had he testified he would have had to admit to a criminal record-- by his own petition he had by then been convicted of attempted grand larceny (whether after trial or on plea he does not state) for which he had meanwhile been sentenced to a term of two to three years in state prison.
 
 
 81
 Ross was represented by Harvey Strelzin, Esq., whose competence he does not question, and Strelzin, who knew of Jenkins and the gun, advised a plea of guilty to murder in the second degree. Ross does not offer Strelzin's affidavit in support of his position, nor does he account for his failure to submit any affidavit or statement from Strelzin.
 
 
 82
 The majority holds that a petitioner must show that the plea was 'substantially motivated by a coerced confession' before he is entitled to relief. As illustrated by Rosen (United States ex rel. Rosen v. Follette, 409 F.2d 1042 (2d Cir.)), which we also decide today, a petitioner is also required to make a substantial showing that the plea was in fact the result of the coerced confession and not of some other factor before he is entitled to a hearing. Whether the petitioner had made a sufficient showing in any particular case can only be determined by looking at the specific allegations. Where, as here, it appears that there was substantial other evidence against the petitioner, that his counsel recommended that he not pursue the confession claim, that he pleaded to a reduced charge, and that he did not raise the claim for ten years, the petitioner should be required to make more of a showing than the bare boned allegations he has made here before any court should be required to grant a hearing. In my view, petitioner's unsupported allegations suggest a conclusion that his counsel told him not to bother trying to 'get back' his confession and going to trial, since he would, even without the confession (or the gun, for that matter), stand a good chance of being convicted of first degree murder and being sentenced to death. Ross accepted this as good advice and accepted the plea as a good bargain. Far from showing that the plea was substantially motivated by the confession, the allegations show that it was motivated both by the knowledge of guilt and the fear of being convicted for the crime he actually committed. In these circumstances, the plea should stand and no hearing to question it should be required.
 
 Petition for Foster Dash
 
 83
 The petition of Foster Dash seeks a hearing on two different grounds: (1) that the plea was involuntary because there was not available to him at the time of his plea in 1959 a constitutional means of testing the voluntariness of his confession; and (2) that the trial judge coerced him into pleading guilty by threatening him that he would get the maximum sentence if he stood trial and was convicted. As to the first ground, I would deny relief for the reasons I have set forth above.
 
 
 84
 But, even applying the standards set forth in Judge SMITH'S ooinion, I do not believe a hearing should be granted as Dash gives no reason why he has not supported his petition with an affidavit or statement of counsel. In fact there is nothing in the record to show who counsel was. The petition is wholly insufficient in failing to supply many material details of which the petitioner must have knowledge.
 
 
 85
 From Dash's sketchy petition, the answering affidavit of an Assistant Attorney General which is not controverted by Dash as to any stated facts, and from the decisions of the New York courts concerning Dash and his three co-defendants the following emerges:
 
 
 86
 On February 9, 1959, four persons, one of whom was armed, held up and robbed one Shedletsky in Bronx County. On February 24, 1959, the Grand Jury indicted Joseph E. Fields, 'John Doe,' 'Richare Roe' and 'Peter Doe' for the crime. Fields was the only one who had been apprehended soon after the crime and it was he who shortly thereafter named as his three confederates the petitioner, Foster Dash, Albert Devine and Rudolph Waterman.[5]
 
 
 87
 Dash was arrested on February 25 or 26. His petition alleges the police took him to a station house in New York County where he was beaten but said nothing and thereafter to a station house in the Bronx. He requested to contact his family, or that he be permitted to have counsel, but he alleges these were denied him. He was further questioned and held incommunicado for 7 1/2 hours and then taken to the district attorney's office. He alleges threats made to him and the denial of his further requests. He says that he 'then involuntarily signed a prefabricated confession to a crime that I did not commit.'
 
 
 88
 Dash first mentions his 'defense counsel' as being present on March 16, 1959 when he appeared for a pleadig and the district attorney 'was only offering a plea to robbery in the first degree.' He claims counsel advised him to plaed guilty and throw himself on the mercy of the court because of the confession.
 
 
 89
 When the case came up again for pleading on April 1, 1959, Dash alleges the trial judge stated that if he went to trial and lost, the court would impose the maximum penalty and the judge said the crime with which he was charged was 'next to murder.'
 
 
 90
 Dash alleges that when the case was called again on April 6, he entered a plea of robbery in the second degree 'due to the undue pressure which was placed upon this relator, as well as the alleged co-defendant.' Later in his petition Dash states that 'the threats made by the court was not a matter of open record.' Fields also pleaded guilty that day. Later, on August 3, 1959, Dash was sentenced to a term of 8 to 12 years as a multiple offender. From Dash's petition it seems that prior to the plea he was already a second felony offender and if he pleaded guilty he faced a possible maximum sentence of 60 years. Fields was sentenced to 10 to 12 years.
 
 
 91
 Waterman and Devine stood trial and following their conviction for robbery first degree, grand larceny second degree and assault second degree, they received sentences of 15 to 20 years. The Appellate Division in People v. Waterman, 12 A.D.2d 84, 208 N.Y.S.2d 596, reversed the convictions and the Court of Appeals affirmed on the ground that it was constitutional error to admit into evidence the post-indictment statement of Waterman taken in the absence of counsel, 9 N.Y.2d 561, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961). Waterman and Devine later pleaded guilty to assault second degree and were sentenced to 2 1/2 to 3 years.
 
 
 92
 Dash then brought coram nobis proceedings, seeking treatment similar to Waterman and Devine on the ground that his confession had induced his plea was guilty, and he also claimed his plea was coerced by the judge's threat. His petition was denied by all courts although in the Court of Appeals two judges voted to remand for a hearing as to whether the guilty plea was coerced. In its memorandum decision, People v. Dash, 16 N.Y.2d 493, 260 N.Y.S.2d 437, 208 N.E.2d 171 (1965), the Court of Appeals, because Jackson v. Denno, supra, had but recently been decided, expressly approved its earlier holding in People v. Nicholson, 11 N.Y.2d 1067, 230 N.Y.S.2d 220, 184 N.E.2d 190 (1962), that it would not listen to post-conviction attacks on confessions where defendants had pleaded guilty. The court wrote:
 
 
 93
 'A defendant who has knowingly and voluntarily pleaded guilty may not thereafter attack the judgment of conviction entered thereon by coram nobis or other post-conviction remedy on the ground that he had been coerced into making a confession and that the existence of such coerced confession induced him to enter the plea of guilty. If a defendant desires to contest the voluntariness of his confession, he must do so by pleading not guilty and then raising the point upon the trial; he may not plead guilty and then, years later, at a time when the prosecution is perhaps unable to prove its case, assert his alleged constitutional violation. The issue as to whether the confession was illegally obtained is waived by the guilty plea.'
 
 
 94
 Thereafter Dash knocked on the federal court doors of the Southern District.
 
 
 95
 In my view, Dash, advised by counsel, made a deliberate and voluntary choice that his interests were best served by his plea of guilty. He must have known that Fields had made a statement to the police which implicated him; he did not know what Waterman and Devine might do.
 
 
 96
 But the petitioner says nothing about what counsel advised him, what he and counsel knew and what evidence was available to the state. We are not even told the name of counsel and whether counsel was retained or assigned. We do not know whether the victim of the robbery, Shedletsky, could identify Dash; obviously he had identified Fields who was caught soon after the crime.
 
 
 97
 As to the second ground for a hearing, the alleged threats of the judge, the New York Court of Appeals has passed upon this and has held in effect that not enough is alleged to require a hearing. I agree. The allegation seems to amount to little more than that the judge pointed out to the defendant, as indeed he should have, what he faced in the event of conviction, whether by trial or plea. Obviously the record does not bear the petitioner out as he alleges that 'the threats made by the court was not a matter of open record.' If we had before us an affidavit of counsel or any other reliable witness to support Dash's claim of judicial coercion there might be sufficient reason to order a hearing as we did in United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir. 1963) where the court thought the minutes were ambiguous. But here there is insufficient substantiation and the district court properly denied a hearing.
 
 
 98
 For these reasons I would affirm the judgments of the district courts which denied the petitions of Ross and Dash for writs of habeas corpus.
 
 
 99
 The enforcement of their criminal laws by the states is an area where federal courts should act with some care and with due appreciation of the consequences. When the Supreme Court decided Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), where it held that federal habeas corpus is still available to a state prisoner even though he has failed to appeal his conviction, Mr. Justic Clark in his dissent pointed out that the floodgates were being opened. The following year state prisoners filed 3,531 petitions in federal courts, an 80% Increase over the 1,903 petitions the year before. The tide rises year by year:
 
 
 100
 State Prisoner
 Habeas Corpus
 petitions filed
Fiscal Year in the District Courts[8]
 1963 1,903
 1964 3,531
 1965 4,664
 1966 5,162
 1967 5,948
 1968 6,331
 
 
 101
 As a majority of my colleagues have now clearly charted for all state prisoners who are imprisoned after pleas of guilty what they must allege in order to get a hearing, it will follow as surely as night follows day that the federal courts will be inundated with petitions which will total many times the 6,331 commenced in 1968.
 
 
 102
 Everywhere in the United States local courts and prosecutors are today having to cope with a steadily mounting increase in criminal cases each one of which requires two or three times more court time than was the case a few years ago. Counsel is usually assigned at the beginning of the case, at least as early as the arraignment. Thereafter preliminary hearings are held on search and seizure, the admissibility of confessions, identification and other evidence. Only after such hearings have been decided adversely to the defendant, are cases tried or pleas of guilty entered. Thereafter appeals are taken, and in New York these may be taken even after pleas of guilty. But this will not be the end because the federal courts, if the views of my colleagues in these should prevail, must now entertain petitions from state prisoners who pleaded guilty years ago and hold thousands of hearings.
 
 
 103
 With these decisions we accelerate unmistakably the trend toward federal court supervision and correction of every possible error or supposed error which can be made in the prosecution of a state criminal case. What plea of guilty cannot be alleged to have been 'coerced' for some fanciful reason? What is there left which cannot be argued to be a violation of due process, or an unequal protection of the laws? How is the most competent and experienced attorney who is assigned to represent a defendant to protect himself against any charges of incompetence or failure fully to advise a defendant regarding a proper defense to the charges or a settlement by way of guilty plea?
 
 
 104
 I wish to be counted among those who do not think federal judges were ever meant to review every state criminal proceeding or that there is any basis for supposing that they can reach a more just result than the state court judges. We would be well advised not to arrogate so much ultimate power to ourselves, as has been done by federal decisions the past six years, in the name of safeguarding constitutional rights, and to be chary of exercising such power except in the most compelling circumstances. We have gone far enough already; we should not take the further step which will lead of the review, in one guise or another, of every plea entered in a state court.
 
 
 105
 I would affirm the district court orders which denied the petitions.
 
 
 106
 MOORE, Circuit Judge (dissenting) (with whom Chief Judge LUMBARD and Circuit Judge FRIENDLY concur):
 
 
 107
 I would not differ from Judge SMITH'S thoughtful and carefully analytical opinions in this and the companion case, United States ex rel. Dash, including the comment 'when to hold a hearing has apparently been complicated in this Circuit,' were it nor for the fact that these decisions well illustrate the 'complicated' nature of the problem, namely, hearings directed in Ross and Dash and no hearing in Rosen.
 
 
 108
 My doubts and disagreement stem from the majority' assumption that 'This case raises the narrow question whether a District Court should apply the standards of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 735, 9 L.Ed.2d 780 (1963), in determining whether to hold an evidentiary hearing upon a habeas corpus petition where the petitioner is confined after a plea of guilty and is contending that the plea was not voluntary because it was induced by the existence, or threatened use, of an allegedly coerced confession.'
 
 
 109
 The belief of four members of the Court in Townsend v. Sain, supra, as to the ineffectiveness of the so-called 'standards' in actual application is well expressed in the dissenting opinion of Mr. Justice Stewart, 372 U.S. at 325-334, 83 S.Ct. at 763-768. Furthermore, I find nothing in Townsend v. Sain which indicates that 'where the petitioner in such a case has not received a 'full and fair evidentiary hearing' in a state court as to the voluntariness of the plea, a hearing be held in the federal District Court.'
 
 
 110
 Townsend was convicted of murder after trial by jury; the habeas corpus proceeding was based upon the illegal admission of a confession obtained while he was under the influence of drugs. The Supreme Court was not dealing with a plea of guilty, the circumstances under which it was made or, as here, the quality of the evidence in the petition attacking the plea. Therefore, the so-called 'standards' of the majority in Townsend v. Sain relating to the development of the factual circumstances surrounding an illegal confession cannot be expected to be the standards which that Court would have set were it dealing with a situation in which a petitioner sought to repudiate a guilty plea.
 
 
 111
 Referring to the specific cases now under consideration: In Ross, the trial court had all the essential facts before it to render an objective decision, yet this court directs a hearing. In Rosen, in addition to allegations of the existence and threatened use of a coerced confession, there was proof that Rosen's wallet (comparable to the gun evidence in Ross) was found at the scene of the burglary and that he 'was represented at trial by (experienced) counsel whose competence he does not attack.' Accordingly, this court finds that 'the application was insufficient' to justify a hearing. In Dash there was also the existence and threatened use of an allegedly coerced confession and a State-court-rejected claim of a threat by the trial judge to impose a maximum sentence if Dash were found to be guilty. This court holds that 'In these circumstances there is an issue as to the motivation of the plea which cannot be resolved without a hearing.'
 
 
 112
 If 'motivation' is to be the test, of necessity there must be a hearing in all cases so that the prisoners' mental processes may be reviewed and appraised in the light of their present reflections over their now-much-regretted decisions to plead guilty. If our decision to consider en banc these three cases has been for the purpose of affording some 'standards' for district court judges in their determinations as to when to hold a hearing, our deliberations and the results thereof have been an exercise in futility. The conclusion is obvious that appellate judges have chosen to read the petitions differently in the three cases and that the strongest factual case for denial of a hearing, Ross leads the group in reversal of the district court's appraisal of the merits of the application.
 
 
 113
 The answer is not to be found in generalities in the many cases in which hearings had actually been held in the district court. In this group are: United States ex rel. Swanson v. Reincke, 344 F.2d 260 (2d Cir. 1965), cert. denied 382 U.S. 869, 86 S.Ct. 144, 15 L.Ed.2d 108; Hall v. United States, 259 F.2d 430 (8th Cir. 1958), cert. denied 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680; Watts v. United States ,107 U.S.App.D.C. 367, 278 F.2d 247 (1960); United States ex rel. Staples v. Pate, 332 F.2d 531 (7th Cir. 1964); United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir. 1965); and United States ex rel Siebold v. Reincke, 362 F.2d 592 (2d Cir. 1966).
 
 
 114
 None of these cases bear upon the issue 'when to hold a hearing.' This question must, and can, be determined only from the papers before the district judge. This truism, often overlooked or ignored, was succinctly stated in United States v. Ellenbogen (Anderson, C.J.; Lumbard, Ch. J. and Waterman, C.J., concurring), 365 F.2d 982 (2d Cir. 1966), as follows:
 
 
 115
 'The trial court's exercise of discretion can only be tested in the light of the reasons disclosed at the time the motion was heard and not on the basis of more elaborate representations argued on appeal. Ungar v. Sarafite, supra, (376 U.S. 575) at 589, 84 S.Ct. 841 (11 L.Ed.2d 921).
 
 
 116
 Accepting the premise that the district judge has before him only the petition and possible supporting affidavits and the statement in Glenn that 'a voluntary guilty plea entered on advice of counsel is a waiver * * *,' in my opinion inquiry should focus upon 'voluntary' and 'advice of counsel.' In other words, has the petitioner met his burden of showing, in a factual and not a conclusory manner, that pressures, deceptions or possibly mistakes of material facts of constitutional magnitude were the inducing cause of his guilty plea-- the elements crucial to a decision by the district judge as to when to hold a hearing? To decide this question, the district judge must attempt to make an objective evaluation of an essentially subjective decision by the prisoner, to wit, what induced him to plead guilty? Sufficient factual allegations should be presented so that as accurate a reconstruction of the 'guilty plea' sence may be made as possible. First, consider the confession. It was definitely made when Ross was 'in custody.' The custody, however, was not while under suspicion of the murder but rather in Sing Sing Prison where he was serving a sentence for attempted grand larceny. Second, at the time of his plea, Ross was represented by competent counsel. Third, Ross knew that a co-defendant, Jenkins, had confessed and would testify against him. Fourth, Ross knew where the gun, the murder weapon, was. Fifth, Ross' attorney knew of Ross' claim and professed desire to repudiate the confession. Against the background of these facts, Ross pleaded guilty. There is no showing that Ross did not understand their effect on a possible conviction of first-degree murder or that he did not have a full opportunity to discuss all the facts with his attorney and weigh their consequences. Ross has produced no facts indicating incompetence of counsel or inadequacy of access to him.
 
 
 117
 Upon all the facts, I conclude that the district judge properly exercised his discretion in denying the petition without directing a hearing. Ross, in my opinion, has failed to meet his burden of showing that his plea was involuntary. In a way, every plea is 'involuntary' because the defendant is forced-- even coerced-- by the situation then facing him to make a decision and to choose between the two evils which then confront him. If he chooses the lesser of the two evils, he is scarcely making a 'voluntary' (in a Websterian sense) decision. Probably the test should be an 'understanding' decision to be determined as objectively as possible-- therefore, the importance of the factual allegations. To be sure, Ross' choice obviously was not easy or pleasant. He alone had to make that choice in the light of his own secret knowledge of his guilt or innocence, the not so secret knowledge of the gun and Jenkins' proof, and aided by the practical and objective advice of counsel.
 
 
 118
 I do not differ with the majority's statement that 'The question to be answered in any case involving a collateral attack on a conviction based on a plea of guilty is usually expressed in terms of whether or not the plea was a 'voluntary' act.'-- but this is not the question now before us. Nor are we faced with the hypothesis suggested by them, that we would be holding that a coerced confession may never be raised as a factor rendering a plea involuntary. I would not so hold and do not find that our own cases reach this result.
 
 
 119
 Affirmatively, I would hold that an appellate court should not follow the line of least resistance namely, to grant a hearing in every case and, thus by their decisions deter district judges from deciding cases without a hearing where no substantial showing has been made by petitioners that their pleas of guilty were involuntary. This leads me to the conclusion that we should adhere to our supposed appellate function and pass upon the district judge's judgment and not consider the case de novo. Using this standard, I find that upon the facts before him in this case, he properly denied the petition without a hearing.
 
 
 120
 I am not unmindful of the decision in United States ex rel. Richardson v. McMann, 408 F.2d 48 (2 Cir. February 26, 1969) (also decided this day). That case presents an unusual exception to the principle that a district judge can pass only upon the papers before him. There we took into consideration the allegations placed before us in an affidavit presented for the first time in the appellate brief which raised, in effect, the question of inadequate representation of counsel. Whether these charges are frivolous and possibly perjurious or are based upon fact could not have been determined on the papers before us. Under these special and exceptional circumstances, we felt that the interests of justice required a hearing at which all parties vitally interested in establishing the true situation could be heard.
 
 
 121
 The Richardson case is not in my opinion in any way controlling on the problem here, and I would affirm the district judge's decision.
 
 
 122
 FRIENDLY, Circuit Judge (dissenting) (with whom LUMBARD, Chief Judge, and MOORE, Circuit Judge, concur):
 
 
 123
 No decision of the Supreme Court has held or even intimated that an accused who has been convicted upon a guilty plea, made on the advice of counsel after full explanation of its consequences and without coercion or trickery of any sort by the state, and thus 'voluntary' in the ordinary use of language, is entitled to have the conviction set aside because the plea was influenced in greater or less degree by a previous act of the state in violation of his constitutional rights.
 
 
 124
 The two decisions relied on in the majority opinion are Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), and Harrison v. United States, 392 U.S. 219, 223, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). Machibroda was the archetype of a claim of an involuntary plea in the time-honored sense; the defendant alleged this had been made on the faith of a promise by an Assistant United States Attorney that was not performed. While the Court's statement, quoting Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 that guilty pleas should not be accepted 'unless made voluntary after proper advice and with full understanding of the consequences' is indeed clear, as a concurring opinion here states, what is equally clear is that the Court was not speaking at all to the issue whether a plea so made can nevertheless be set aside, long after the defendant has gotten the benefit of his bargain and when the state has lost its ability to prosecute, because of previous allegedly impermissible conduct by the state. The quotation followed the hardly novel affirmation that 'A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.' The sole issue in the case was whether Machibroda had alleged enough to have a hearing. The Justices who decided he had could scarcely have believed they were settling the altogether different and highly important issue we have before us here. The decision by a sharply divided Court in Harrison dealt with still another problem, of rather small practical dimensions, the use of testimony at a previous trial that was claimed to have been induced by a previous illegally obtained confession.
 
 
 125
 The effort of the concurring opinion to fill the void with an extract from Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 118, 76 S.Ct. 223, 224, 100 L.Ed. 126 (1956), is a dismal failure. It is true that Mr. Justice Black there stated, to give the quotation in full, 'Our prior decisions have established that: (1) a conviction following trial or on a plea of guilty based on a confession extorted by violence or by mental coercion is invalid under the Federal Due Process Clause.' However, none of the six decisions cited in support of that statement related to guilty pleas. The Herman case did concern such a plea but the opinion must be read in the context of petitioner's allegations, 350 U.S. at 119, 76 S.Ct. at 225, that:
 
 
 126
 'The assistant prosecuting attorney demanded that petitioner sign a plea of guilty to all the charges. When petitioner asked what he was signing, the assistant prosecuting attorney said 'Sign your name and forget it.' Petitioner was not informed of the seriousness of the charges by the prosecutor or the judge; he did not know that his plea of guilty could result in a maximum sentence of some 315 years; he did not know nor was he informed that he could have counsel. Petitioner pleaded guilty to all of the charges against him. He now says he was innocent of all but one.'
 
 
 127
 No cumulation of resounding adjectives can conceal the chasm separating Pennsylvania ex rel. Herman v. Claudy from the case before us. If any such facts had been presented here, there would have been no in banc and no dissents. To regard a phrase in the Herman opinion as compelling decision without regard to the totally different facts that gave rise to it is to ignore rather than to follow the genius of the common law system.[1]
 
 
 128
 Our own previous opinions point away from the determination now made rather than toward it. While the court sitting in banc is free to engage in a new departure, I perceive no sufficient reason for embarking on an uncharted course that will impose a tremendous burden on state and federal judges, prosecutors and lawyers furnishing assistance to the indigent and, to the small extent it has any practical effect, will further impair the ability of society to protect itself 'against those who have made it impossible to live today in safety.' Harrison v. United States, supra, 392 U.S. at 235, 88 S.Ct. at 2017 (dissenting opinion of White, J., see also dissenting opinions of Black, J. and Harlan, J).
 
 
 129
 The court's opinion supplies no intelligible guidelines to help lower courts in handling the Herculean task it assigns them. A hearing must be had whenever a prisoner makes 'particularized allegations as to how that confession rendered his plea involuntary.' This test will speedily become well known in the prisons and is exceedingly easy to meet; the error made by the relator in United States ex rel. Rosen v. Follette, 409 F.2d 1042 (2 Cir.) decided herewith, will not be repeated. The court gives almost no aid concerning the standard for ruling on petitions after a hearing has been held. Is it enough that the illegal confession was a factor or must it have been an important factor? And how can anyone tell? Isn't a confession almost inevitably an important factor except when the other evidence is overwhelming? Even if the standard were framed a bit more rigidly so as to require a showing that the plea would not have been made 'but for' the confession, the trial courts are being given a job impossible of successful performance. Despite superficial similarity, this issue is actually quite different from determining whether a plea of guilty was 'voluntary' in the traditional sense. To decide that issue the court need only determine whether unfair pressures were applied; if they were, non constat that the defendant would have pleaded guilty without them. For the same reason the question is also less susceptible of satisfactory answer than deciding whether a confession was 'voluntary'; yet lack of confidence in the ability of judges to handle that issue underlay the prescription of specific rules on police interrogation in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Even in what would seem the strongest case for the prisoner, namely, where a confession illegally obtained when other evidence was then lacking has been speedily followed by a guilty plea, how can anyone ever know whether the accused would not have made the same decision anyway, because of his knowledge of the availability of additional evidence and the consequent attractiveness of a lower sentence? The only cases concerning which there can be reasonable certainty are those at the opposite end of the spectrum, where there was so much untainted evidence that the confession could not have been a significantly motivating factor. If the 'but-for' test is the right one, the instances where a court will be required to set aside a guilty plea will thus be a small fraction of the fraction in which a confession was illegally obtained; in an even smaller fraction of these would the defendant have escaped conviction; and the fraction in which he was innocent will, of course, be infinitesimal. If ever a situation called for heeding Mr. Justice Jackson's admonition against seeking needles in haystacks, Brown v. Allen, 344 U.S. 443, 536-539, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (concurring opinion), and enabling courts and lawyers to devote their limited time to worthier causes, this is it.
 
 
 130
 On the other hand, any standard less severe than the 'but-for' test would be grossly unfair to the state, and even this is unfair enough. In contrast to the situation where the legality of a confession has been tested before or in the course of a trial, the prosecutor will generally have dismantled whatever material he had. If the constitutional claim succeeds, the state will rarely be able to conduct the trial that is all the defendant deserves on any view, even though sufficient untainted evidence was available when he pleaded guilty years before. Here, if Ross had elected to stand trial for murder fourteen years ago, Jenkins would have been an important witness against him; we are not told whether Jenkins is still available but, even if he is, his evidence concerning events of 1954 will not be very convincing. The way to protect both the accused and society with respect to this problem is through statutes like 813-c and 813-g of the New York Code of Criminal Procedure which allow the defendant to move in advance of plea to suppress the fruits of an unconstitutional search or an illegally obtained confession and, if the motion is denied, to plead guilty and nevertheless appeal; a record is thus made and, if the accused prevails, he can be tried before too much time has elapsed since the crime. With these statutes taking care of the future, I would leave the past where these prisoners were content to have it.
 
 
 131
 I recognize that the court apparently limits itself, for the time being, to New York confessions antedating Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and postpones the problems with respect to later New York confessions, those in Connecticut and Vermont, and illegal searches and seizures. I realize also that a special argument can be formulated concerning these pre-Jackson confessions on the basis that the accused had no constitutionally acceptable way to test their legality. But the pejorative overtones of such a statement considerably outrun the fact. While the procedure prescribed by Jackson is a substantial improvement, the previous New York practice was a long way from denying an accused a reasonable opportunity to have the validity of his confession determined. The majority in Jackson conceded that New York's belief in the fairness of its procedure was 'not without support in the decisions of this Court,' 378 U.S. at 395, 84 S.Ct. at 1790, notably Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953), and four Justices found nothing constitutionally wrong with it. Furthermore there was always the opportunity to resort to federal habeas corpus in the event of conviction and to have the voluntary nature of the confession tested there. The case where a defendant otherwise willing to stand trial was forced into a guilty plea by the difference between pre-Jackson and post-Jackson procedures with respect to confessions is thus a construct of the fertile brains of defense lawyers without counterpart in reality.
 
 
 132
 The rhetoric in the concurring opinion is badly misplaced. The issue is not whether Ross and others like him should be denied rights accorded them under the due process clause, which all would agree they should not, but whether, after having made a bargain recommended by competent counsel with full knowledge of the facts and the consequences, they should now be permitted to repudiate it on ground whose availability was then well known to them, at a time when the state is unable effectively to controvert either their claims of illegality or prove their guilt. Any morality in this position altogether eludes me. It is high time to recall that, even with respect to criminal defendants, a bargain is a bargain if made by an intelligent man with full protection from the court and on the advice of counsel. The thousands of tedious journeys which we here inflict on state and federal judges cannot be justified by any real prospect that a few innocent defendants may be found at the end of the tunnel. Men who first confess and then, on the advice of counsel, plead guilty to serious crimes, do so because they are.
 
 
 133
 For these reasons, as well as those given by my brothers LUMBARD and MOORE, in whose opinions I join, I decline to participate in opening up a large new area where New York criminal convictions have been thought until this time to possess finality.
 
 
 
 [1]
 Judge Bruchhausen in his opinion recited some of Ross' allegations, including the following:
 'In May, 1954, while in State custody, the relator was taken to the office of the District Attorney and questioned about the commission of a murder; he was coerced into signing a statement, confessing the crime; his request to be permitted to consult with his attorney was refused and he was not advised of his right to remain silent;
 'In October, 1954, he was arraigned on an indictment, charging him with the commission of first degree murder;
 'Five or six weeks later, he requested his court appointed lawyer, Mr. Harvey Strelzin, to seek the return of the confession; Strelzin urged that no such action be taken; if he persisted in demanding a trial, Mr. Jenkins, a witness for the People would testify against him and he would get the chair;
 'In February, 1955, he was brought into court, represented by counsel, and informed that the District Attorney was willing to accept a plea to second degree murder and that his sentence would be twenty years to life; he thereupon pleaded guilty to that charge;
 'March 14, 1955, judgment of conviction was entered, including a sentence of forty-five years to life';
 Among other allegations by Ross was the following:
 '13. Sometime later he visited me again; I would say it was five or six weeks afterward, but I cannot be certain with greater specificity. I asked him then 'to get my confession back.' I recall those to have been my exact words. I meant that I wanted to repudiate the confession and have it suppressed. I spoke in the belief that it could be done in some way. He told me that that was completely out of the question and that at any rate the District Attorney had the gun, that nothing had changed, that Jenkins would tell his story to the jury, and that his testimony, backed up by the confession and the gun, would be enough to make 'a jury of twelve cousins' convict me and send me to the electric chair. He told me that he would 'get the first possible break' for me from the District Attorney, but that I 'would be dead by the Fourth of July' if I risked a trial.
 '14. When I was brought to Court in February of 1955, Mr. Strelzin came in to see me while I was in the detention cell. I asked him again about repudiating and suppressing my confession; this seemed to exasperate him because he spoke sharply about having gone all through that before and that I had better listen to him because he was my lawyer and not those convicts in Raymond Street who would all be in Sing Sing in six months with all the law they knew. I told him I had not asked him on the basis of anything anyone had told me. He seemed to grow calmer at that. He told me he had spoken to the District Attorney, who was willing to allow me to plead to second degree murder, and I would get twenty years to life; he said it was an 'or else' offer, that I knew the evidence the District Attorney could present against me. He said that things were no better than before and, if anything, were much worse; the District Attorney had the confession, the gun, and Jenkins, who could be expected to tell any story to help himself. If I insisted on going to trial, well, he was my lawyer and would do what he could, though that couldn't amount to very much because 'there isn't a pair in the world to beat four aces.' Twenty to life was a long time, he wasn't going to argue that it wasn't; but it had to be better than the electric chair.'
 
 
 [2]
 The cases cited in the quoted discussion in Swanson are the following: Gonzalez v. United States, 210 F.2d 825 (1 Cir. 1954) (denial of motion to vacate judgment affirmed where conviction based on guilty plea and motion based solely on the ground that evidence had been unconstitutionally seized); Hall v. United States, 259 F.2d 430 (8 Cir. 1958), cert. denied 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680 (1959) (denial of motion to vacate sentence affirmed where the allegation was of confession after 'four hours of intensive interrogation without legal advice or counsel,' but there was a finding in the District Court that there was a 'free and voluntary' plea of guilty); Watts v. United States, 107 U.S.App.D.C. 367, 278 F.2d 247 (1960) (denial of Sec. 2255 motion to vacate sentence affirmed, where the motion was based on the ground that police used appellant's co-defendant's confession to induce him to confess and then to plead guilty, but upon a full hearing in the District Court it was found, on ample evidence, that the guilty plea was 'competently, voluntarily and intelligently entered'-- the statement, picked up out of context in the West's headnote, that collateral attack on the plea of guilty would not lie, reads in full, 278 F.2d at 250: 'Finally, at the hearing we ordered, appellant frankly admitted his guilt. On this record collateral attack will not lie.'); and United States ex rel. Staples v. Pate, 332 F.2d 531 (7 Cir. 1964) (dismissal of petition for habeas corpus affirmed, where petitioner contended that his plea of guilty did not waive prior police misconduct-- alleged illegal search-- which 'induced' his plea, but the District Court found after a hearing that petitioner was not entitled to a writ, and the Court of Appeals noted three times that there was no evidence presented at the hearing that the plea was not voluntary)
 
 
 [3]
 To enable the district court to decide whether or not a hearing should be ordered, additional supporting material such as the affidavit of the attorney who represented the petitioner when he entered the guilty plea, or exhibits or affidavits of persons having knowledge of the claimed facts, should be appended, with the petitioner's own affidavit, to the original petition filed with the district court. In this case, however, we are satisfied from the petitioner's affidavit alone that he is entitled to the requested hearing
 
 
 [4]
 The conviction would stand, of course, if the state court found after full and fair evidentiary hearing, either that the confession was voluntary or that the plea was not substantially motivated by the confession
 
 
 [5]
 The District Court summarized the record before it as follows:
 'Petitioner alleges: (1) that his plea of guilty was the product of a coerced confession, (2) that his plea of guilty was coerced by the trial court by telling him he would get the maximum penalty if found guilty after trial.
 'In regard to the first contention, it is well settled that a voluntary plea of guilty entered on advice of counsel constitutes a waiver of all nonjurisdictional defects in any prior stage of the proceedings against the defendant. United States ex rel. Glenn v. McMann, 349 F.2d 1018 (2d Cir. 1965); United States ex rel. Swanson v. Reincke, 344 F.2d 260 (2d Cir. 1965); United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir. 1965). Petitioner therefore cannot succeed on the basis of his first contention.
 'With respect to the second contention it appears that the prosecutor in the state court proceedings filed an affidavit in which he categorically stated that the trial judge never threatened the defendant. See, People v. Dash, 16 N.Y.2d 493 (260 N.Y.S.2d 437, 208 N.E.2d 171) (1965).
 'Further the transcript relating to the entry of petitioner's plea of guilty clearly indicates that the defendant made an intelligent and uncoerced choice and that no promises or threats were made to him.'
 
 
 [6]
 The conviction would stand, of course, if the state court found after full and fair evidentiary hearing, either that the confession was voluntary and there was no threat by the judge, or that the plea was not substantially motivated by the confession or by the alleged threat of the judge
 
 
 [1]
 Administrative Office of the United States Courts, Annual Report of the Director, 1966 and 1967, Tables C-3 and C-4. The information for 1968 is not yet published
 
 
 [1]
 In this respect the state is usually at a serious disadvantage where pleas of guilty are nullified and the case must be tried years later. Where there has been a trial and a retrial is required, the state may use the evidence of a witness who has become unavailable. New York Code of Criminal Procedure 8(3) (d). Where a defendant has pleaded guilty, however, it would be a very rare case where the witness would have testified under oath subject to cross-examination under such circumstances that the evidence, could be used if the witness were later unavailable
 
 
 [2]
 The rationale for this has been articulated in the American Bar Association Standards for Pleas of Guilty, formulated by an Advisory Committee of which Walter V. Schaefer, Justice of the Supreme Court of Illinois, was Chairman and adopted by the ABA House of Delegates in February 1969
 
 
 [3]
 Of course the gross incompetence of counsel or other circumstances indicating substantial failure of representation would present a different question under the Sixth Amendment. No claim of that sort is even suggested in these cases
 
 
 [4]
 Following this 1963 opinion there was an extensive hearing in the district court at which the state judge testified. The district court judge held that there had been no coercion by the state court judge and we affirmed the district court's denial of the petition for habeas corpus. 348 F.2d 373
 
 
 [5]
 Apparently Waterman was not questioned until June, 1959, when he was in prison on another charge. The record does not show when Devine was arrested
 
 
 [6]
 The District of Columbia, the Canal Zone, Guam and the Virgin Islands are excluded. See the Annual Report of the Director of the Administrative Office of the United States Courts (page II-44, preliminary ed. 1968)
 Of the total of 27,539 such petitions filed during the period from 1963-1968, 3,581, or 13% Were filed in the district courts of the Second Circuit. See the annual reports of the Director of the Administrative Office of the United States Courts for the years 1963 (p. 201), 1964 (p. 221), 1965 (p. 183), 1966 (p. 175), 1967 (p. 205), 1968 (table C-3, preliminary edition).
 
 
 [1]
 The same comment applies to the reference to a characterization of Herman in United States ex rel. Vaughn v. LaVallee, 318 F.2d 499 (2 Cir. 1963), where this court approved denial of habeas corpus to a petitioner who alleged that his guilty plea was induced by an illegal search