**UNITED STATES of America ex rel. John SADOWY, Petitioner,**

v.

**Vincent R. MANCUSI, Warden, Attica Prison, Attica, New York, Respondent.**

No. 69 Civ. 3143.

United States District Court
S. D. New York.

Oct. 16, 1969.

John Sadowy, pro se.

Louis J. Lefkowitz, Atty. Gen. of State of New York, New York City, for respondent; Mortimer Sattler, New York City, of counsel.

## MEMORANDUM

COOPER, District Judge.

Petitioner, applying *pro se* for a writ of habeas corpus, is presently confined in Attica State Prison, New York, serving as a fourth felony offender a sentence of fifteen years to life pursuant to a judgment of the Supreme Court, Bronx County rendered on February 6, 1968 upon petitioner's plea of guilty to the crime of attempted possession of a firearm. He contends that his plea of guilty was involuntary because it was the direct result of an unconstitutional search and seizure.

■ Petitioner's motion to suppress evidence of a firearm seized from him at the time of his arrest was denied after a full evidentiary hearing in the Supreme Court, Bronx County, on April 20, 1967, long before his plea of guilty. He has exhausted his state remedies with regard to this claim.[1] He is entitled to raise this claim despite his plea of guilty. See United States ex rel. Ross v. McMann, 409 F.2d 1016 (2d Cir. 1969), cert. granted 396 U.S. 813, 90 S.Ct. 65, 24 L.Ed.2d 67 (October 14, 1969).

There is nothing in the record to suggest that the suppression hearing was not full and fair, or that the material facts were not adequately developed. Indeed, petitioner, introducing no evidence at the hearing, apparently concedes the basic facts as alleged by the State and differs only as to the legal conclusion which follows.[2]

The facts developed at the suppression hearing are as follows: On October 21, 1966 an informer, who had never previously given information to the police, told detectives McCarthy and Guerci that petitioner and one Kiernan were going to commit an armed robbery at the O. K. Machine Corp., located at 551 E. 179th Street in the Bronx, on October 25, 1966 at about 2:15 p. m. The informer further told the detectives that the company's payroll was scheduled to arrive in a station wagon at that time and that petitioner and his accomplice would be on hand armed with guns given them by a third party and thus prepared to seize the vehicle, drive to 180th Street and Park Avenue, tie-up the driver, take the payroll, and go to 179th Street and Park Avenue where they would return the guns and give the money to the third party.[3]

On October 22, 1966 the two detectives obtained photographs of petitioner and Kiernan along with their criminal records from the Bureau of Criminal Identification. Both men had long criminal records involving prior robberies and assaults and were believed dangerous.[4]

On October 24, 1966 the detectives visited the O. K. Machine Corp. where they spoke with the company's bookkeeper who confirmed that a payroll in fact would be delivered to the office at 551 East 179th Street in a station wagon on October 25, 1966 between 1:50 and 2:00 p. m.[5]

On the morning of October 25, 1966, the detectives again spoke to the informer who told them that the robbery was still planned for that afternoon.[6]

The two detectives accompanied by other police officers proceeded to "stake-out" the area surrounding the O. K.

1. Judgment affirmed, People v. Sadowy, 30 A.D.2d 1050, 294 N.Y.S.2d 670 (1st Dept. 1968) ; leave to appeal to Court of Appeals denied on February 11, 1969.

2. Petitioner states in his Traverse of August 21, 1969 that he "was not stopped until petitioner was a fifth of a mile away from the factory." This is consistent with the testimony of the arrest-

ing officers. Minutes of Hearing before Justice Murtagh, Supreme Court, Bronx County, April 20, 1967, pp. 11–12, 23–24.

3. See Minutes, *supra* at 5, 6, 16, 19.

4. See Minutes, *supra* at 7, 17–18.

5. See Minutes, *supra* at 8, 19 and 20.

6. See Minutes, *supra* at 9, 20.

Machine Corp. At about 2 p. m. the detectives, recognizing petitioner from his photograph, observed him walking with Kiernan at 180th Street and Third Avenue. The detectives followed them past 179th Street and Third Avenue to 1927 Washington Avenue (between 178th and 177th Streets) where, believing the two men were armed and leaving the area, the detectives arrested and searched them, finding a fully loaded revolver in petitioner's pants pocket and a similar gun in Kiernan's possession.

■ The hearing justice found probable cause for the arrest of petitioner and his accomplice based upon the informer's detailed description of the planned robbery, the corroboration that a payroll was to be delivered to the particular company at the specified date and time, the ascertainment of both men's substantial prior criminal records, and, most importantly, the discovery of the two men named by the informer at the place, date and time predicted for the robbery. We agree. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). At the very least, the police had probable cause to believe petitioner was in possession of a firearm (the crime to which he pled guilty) at the time of his arrest.

While Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) parallels this case in certain respects, we find it distinguishable. Here the information related by the informer described the plan for the robbery with "minute particularity." As Spinelli recognized in discussing Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), "the magistrate when confronted with such detail, could reasonably infer that the informant had

gained his information in a reliable way." 393 U.S. at 417, 89 S.Ct. at 593.[7]

In Spinelli, on the other hand, "the only facts supplied were that Spinelli was using two specified telephones and that these phones were being used in gambling operations." 393 U.S. at 417, 89 S.Ct. at 589. As a consequence the informer's tip in Spinelli was independently corroborated only to the extent that it was ascertained that Spinelli was making use of the two telephone numbers specified by the informer, information available from public records.

Here, as in Draper, "independent police work * * * corroborated much more than one small detail that had been provided by the informant." 393 U.S. at 417, 89 S.Ct. at 590. The informer here was found to have accurately predicted the otherwise unexplained presence of petitioner at a specified location on a particular date and at a particular time when a payroll delivery was due.

The following from Spinelli made in reference to Draper is equally applicable here:

"It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established." 393 U.S. at 417–418, 89 S.Ct. at 590.

Thus, having probable cause to believe petitioner to be in possession of a firearm, "the incident search was obviously justified 'by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the

---

**7.** Neither in Draper, nor here, did the informer state the way in which he had obtained his information. In Draper the informant had supplied police with accurate and reliable information in the past; whereas here the informant was previously unknown to the police. This latter factor is not mentioned in Spinelli, however; rather, the Supreme Court emphasizes the "detail provided by the informant." 393 U.S. at 416, 89 S.Ct. 584. Compare Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

crime.' " [8]  Sibron v. New York, 392 U. S. 40, 67, 88 S.Ct. 1889, 1905, 1912, 20 L.Ed.2d 917 (1968).

 Petitioner contends that there can be no probable cause for the arrest and that the search, admittedly without a warrant, must be deemed illegal because he and Kiernan were walking away from the site where the robbery was supposed to occur. This argument was rejected by the hearing justice who noted that there could be numerous reasons why petitioner and Kiernan were leaving the area other than that they never intended to rob the payroll.[9] Even granting significance to the fact petitioner was apparently leaving the area, we nevertheless believe the detectives had probable cause at that time to believe petitioner was illegally in possession of a firearm.

Petitioner additionally contends that the informer was a former employee of the O. K. Machine Corp. Even assuming this were established at a hearing, there would still be no basis for finding an absence of probable cause.

 He finally points to certain language used by the hearing judge in the course of denying petitioner's motion to suppress as allegedly indicating reliance upon the fruits of the search to establish the necessary probable cause. To the contrary, the justice acknowledged the impropriety of such reliance.[10] Having already found probable cause for the arrest, he simply observed:

"While the justification is found completely independent of what [sic] the results of the search, the results of the search abundantly confirm the

wisdom and propriety of the search." *Id.*

Accordingly, petitioner's application for a writ of habeas corpus is denied.

So ordered.

---

8. There is no need to consider the effect of Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968) and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 1912, 20 L.Ed.2d 917 (1968), which held "that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of

whether he has probable cause to arrest the individual for a crime," because having reason to believe petitioner armed and dangerous, the police also had probable cause to effect an arrest since possession of a firearm by a third felony offender is illegal.

9. See Minutes, *supra* at 33–34.

