**Mendel TEITELBAUM, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 68 Civ. 444.**

United States District Court
S. D. New York.

June 12, 1969.

---

Irving Younger, Henry B. Rothblatt, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, for United States of America; Roger J. Hawke, Asst. U. S. Atty., of counsel.

## OPINION

FRANKEL, District Judge.

On June 2, 1967, Mendel Teitelbaum waived indictment and pleaded guilty to an information charging under 18 U.S.C. § 1542 that he had made a false statement on a passport application, this charge being the first of two counts in the information. Teitelbaum was represented by two lawyers at the time. On June 23, 1967, with the same two lawyers appearing on his behalf (at least one of these lawyers being familiar with the defendant for many prior years, and having assisted him in other criminal difficulties) he appeared for sentencing. He was sentenced to a term of three years, to run consecutively following a prior sentence imposed in the Eastern District of New York for other crimes having fraud as their essential quality.

Over a year ago, petitioner filed a motion under 28 U.S.C. § 2255 claiming that his guilty plea of June 2, 1967, had not been entered with the requisite degree of understanding and voluntariness. The motion was submitted *pro se*. It made, upon oath, charges of the gravest kind. It was supported by seemingly pertinent learning. It was written intelligibly and in reasonably orderly, if somewhat rotund, style. It asserted that Teitelbaum's guilty plea was fatally defective because he had been incompetent at the time of its entry; because his own counsel and the United States Attorney had known of this condition of disability; and because he had lacked sufficient understanding of the English language to comprehend the proceedings at the time of his plea.

The charges on their face were such that they appeared to warrant the assistance of counsel and, possibly, an evidentiary hearing. Accordingly, with his consent, Professor Irving Younger (as Judge Younger then was) was assigned to represent Teitelbaum. He embarked upon the work with the kind of vigor the court had reason to anticipate. The course of his efforts was not smooth, and it was not simplified by the fact that Teitelbaum insisted throughout upon flooding the court and his counsel with direct communications of a lengthy and frequently lurid character. However, by mid-August of 1968, we had progressed to the point of a stipulated order defining the issues as follows:

(1) Whether or not the defendant was mentally incompetent at the time he entered his plea of guilty on June 2, 1967.

(2) Whether his plea was voluntary or was the product of a beating by agents of the Federal Government.

(3) Whether the defendant had sufficient knowledge of English at the time he entered his plea to understand the nature of the proceedings.

The order also reflected the recognition by all of us that Teitelbaum could not in any event be liberated immediately as a result of the present proceeding since substantial time remained on his prior sentence in the Eastern District of New York. Because that was so and because the case did not lend itself to speedy preparation by counsel, the matter was allowed to go over to the fall of last year.

In November of 1968, as a result of concurrent proceedings by Teitelbaum in the Eastern District of New York, it was made to appear that there were conflicting written reports as to Teitelbaum's current competence. Specifically, it was brought to this court's attention that the government was possessed of a psychiatric report rendered in April of 1967 suggesting that Teitelbaum might be "malingering," but affirming that there was no real doubt as to his competence. On the other hand, it was shown that by order of the District Court for the Eastern District, Dr. Matthew Brody had prepared a report in early October of 1968 reporting his diagnosis

that Teitelbaum was, at least at that time, psychotic. In these circumstances, again upon stipulation of counsel, it was ordered by this court that Teitelbaum be committed for an examination under 18 U.S.C. § 4245 to determine his current competence and to indicate, as nearly as possible, the probable state of his competence at the time of his guilty pleas on March 6 and June 2, 1967, in the Eastern and Southern Districts of New York, respectively.

In accordance with that order, three staff psychiatrists of the Medical Center for Federal Prisons in Springfield, Missouri, made a "Report of Psychiatric Staff Examination" dated January 24, 1969. The unanimous conclusions of that report reflected the views of the three signatory staff psychiatrists and of Dr. David Hubbard, who, in his capacity as consultant psychiatrist to the Springfield Medical Center, participated in the examination and diagnosis. The concluding words of the report of January 24, 1969, are as follows:

> "* * * [I]t is [the] unanimous opinion [of the four psychiatrists] that [Teitelbaum] should be returned to court and adjudicated as competent to proceed in his appeal. The Board recommends that a certificate as prescribed under Title 18, Section 4245, not be issued, as there is no reason to believe that Mr. Teitelbaum was incompetent at any time prior to his sentencing."

At about the time of the receipt here of the foregoing report, since Judge Younger had gone onto the bench, the continued representation of Mr. Teitelbaum was undertaken by equally energetic and astute counsel. The court determined that there should be an evidentiary hearing, and such a hearing was conducted on March 10, 1969. Testimony was heard from Teitelbaum himself; from Dr. Matthew Brody, who had found Teitelbaum psychotic in early October of 1968; from Dr. Bernard Berkowitz, who had examined Teitelbaum in September of 1967 at Lewisburg Prison and found him "emphatically" free of mental dis-

order; and from Dr. Frederick M. Miller, one of the staff psychiatrists joining in the Springfield report of January 24, 1969.

At the outset of the hearing, following careful and deliberate consultation between Teitelbaum and his counsel, it was stipulated that all the issues raised by his motion except the question of his competence at the time of his guilty plea were being withdrawn. It was further stipulated that his competence on the date of our hearing, March 10, 1969, was not in question, and the court's own observations tend strongly to confirm the soundness of that stipulation. Accordingly, our concern in the hearing centered only on the allegation that Teitelbaum had been incompetent on June 2, 1967, when he entered his plea of guilty.

The court's finding on this single issue may be stated with relative brevity: the evidence is convincing, by a substantial preponderance, that Teitelbaum understood exactly what he was doing on June 2, 1967, when he entered his plea of guilty. It also appears that he had a hope that he might be treated more leniently upon a guilty plea than upon a conviction after trial, but there is no evidence that this resulted from anything but the normal origins of such sentiments.

■ The evidence that Teitelbaum was competent at the time of his guilty pleas and the imposition of sentences in March and June of 1967 includes the observations then of three judges and two defense lawyers. The live testimony and the reports submitted in evidence here powerfully support the same conclusion. The entirely credible testimony and report of Dr. Berkowitz, based upon closely contemporaneous observations within short months after the guilty plea of June 1967, sustain that physician's conclusion that Teitelbaum was "without mental disorder." The more recent examinations and reports, granting the difficulty of reconstructing a mental and emotional state in the past, weigh heavily in the same direction. Teitelbaum's own

testimony tends also to defeat his present contention. Patently competent now, he recalls in closely circumstantial detail the events attending his guilty plea. While his testimony is not credited in several respects, the apparent falsity has nothing to do with problems of competence either now or at the relevant time in the past.

Counsel for Teitelbaum understandably places heavy reliance upon the report (dated October 4, 1968) and later testimony of Dr. Matthew Brody. In the October report Dr. Brody did diagnose Teitelbaum's condition, at that time, as "Psychosis with psychopathic personality." The report, incidentally—displaying evident familiarity (as did the doctor's testimony) with the legal authorities on *criminal responsibility,* e. g., United States v. Freeman, 357 F.2d 606 (2d Cir. 1966)—seems to concentrate on whether Teitelbaum's behavior resulting in his indictments and guilty pleas was "excusable," a question distinctly different from the question of competence to enter a guilty plea, Floyd v. United States, 365 F.2d 368, 374 n. 9 (5th Cir. 1966), or to stand trial, Swisher v. United States, 354 F.2d 472, 474 (8th Cir. 1966); James v. Boles, 339 F.2d 431, 433 (4th Cir. 1964); Feguer v. United States, 302 F.2d 214, 236 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962); Winn v. United States, 106 U.S.App.D.C. 133, 270 F.2d 326, 328 (1959), cert. denied, 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961); Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725, 729–730 (D.C.Cir.1957), cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958). Wholly apart from that, the report and the testimony of Dr. Brody do not lend substantial support to Teitelbaum's contention that he was incompetent to plead guilty in June of 1967.

On that critical question, Dr. Brody wrote in his report: "All that I can say is that it is possible that he was psychotic at the time that he entered his pleas less than two years ago." This scarcely qualifies as a substantial difference of opinion with the psychiatrist (Dr. Berkowitz) who examined Teitelbaum close to the time of the pleas and found him wholly competent then. On the stand, Dr. Brody stated that he would certainly give weight to the views of the judges and lawyers who deemed Teetelbaum competent when he pled; that it was consistent with his findings of October 1968 that Teitelbaum should have been (as was stipulated) competent in March 1969; and that it was likewise consistent with his October 1968 findings for Teitelbaum to have been fully competent in June of 1967.

 It is undisputed that the burden of proof in this proceeding is upon the movant. Papalia v. United States, 333 F.2d 620, 621 (2d Cir.), cert. denied, 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964); Mealer v. United States, 383 F.2d 849, 859 (9th Cir. 1967); Cruz v. United States, 368 F.2d 783, 784 (4th Cir. 1966). There is no need, however, to dwell upon this. If the prosecution bore a heavy burden of proving competence, it would be sustained on the record now before the court.

Accordingly, the motion under 28 U.S.C. § 2255 must be, and it is, denied. So ordered.