Calvin **LAYNE**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

No. 69 Civ. 5615.

United States District Court, S. D. New York.

April 8, 1970.

Joseph T. Klempner, New York City, for petitioner.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for the United States, John J. Kelleher, Asst. U. S. Atty., of counsel.

## OPINION

FRANKEL, District Judge.

The petitioner in this proceeding under 28 U.S.C. § 2255 attacks the judgment and sentence imposed following his plea of guilty to charges of forging and uttering government checks. The plea was allowed by Judge Motley on April 17, 1969, following a notably detailed and careful interrogation in which petitioner appears to have been crisply articulate, responsive and composed. Between that date and his sentencing by me on May 15, 1969, the petitioner wrote to explain that he had been invited to consider whether treatment for his narcotics problem should be sought for him under the Narcotic Addict Rehabilitation Act of 1966, 18 U.S.C. § 4251 *et seq.;* that he felt such a course to be neither necessary nor suitable in his case; that he considered himself a proper candidate for probation, capable, *inter alia,* of participating voluntarily in a narcotics treatment program; and that I should, accordingly, entertain the alternative of a suspended sentence and supervised probation. These thoughts

were reviewed upon the record when petitioner appeared for sentencing. Again, as in his prior appearance and his written submission on his own behalf, petitioner appeared to be lucid and precisely conscious of all that was happening. For reasons appearing on the record of that occasion, it was concluded that petitioner should not go free, but that his substantial prison sentence (of seven years) should be subject to the potential mitigation allowed by 18 U.S.C. § 4208 (a) (2).

Petitioner lost no time seeking speedier improvement in his situation. By letter of June 14, 1969, he requested reduction of his sentence. The letter tendered, with some eloquence, claims that petitioner had come, finally, to see the error of his former ways. Along with contrition, it stated a corollary purpose to go forth thereafter on straight paths. Petitioner appealed for compassion not only for himself but for the new son he had never seen. He urged that he should be deemed ready now, or soon, to guide himself and that son. While such appeals, however common, are moving, the court felt constrained to deny the application, deeming it more fitting to rely upon the better informed judgment of the Parole Board under 18 U.S.C. § 4208(a) (2).

A few months later, by the *pro se* petition now before the court, petitioner proposed what was (for him) an entirely new approach. This document, contrasting vividly with the earlier suggestions that he could control the narcotics problem quite on his own, urged that his long years of addiction had resulted in his being incompetent either to commit the crimes for which he is in prison or to enter an intelligent guilty plea to the indictment. The broad new proposition —amounting to no more than an assertion that a narcotics addict is *ipso facto* incompetent—seemed insubstantial on its face. The claim of incompetence at the time of the plea seemed especially weightless in light of the fact that petitioner had already been continuously incarcerated for a period of four months or so, mainly on state charges, when he appeared before Judge Motley and gave that plea. See Valcarcel v. United States, 409 F.2d 211, 213 (2d Cir. 1969); Rivera v. United States, 341 F.2d 746 (1st Cir. 1965); Burrow v. United States, 301 F.2d 442 (8th Cir.), cert. denied, 371 U.S. 894, 83 S.Ct. 193, 9 L.Ed.2d 126 (1962).

Despite the probable frivolousness of the petition, the court concluded that it should not be rejected out of hand, but that the petitioner, serving a potentially substantial sentence, should have professional legal assistance before his petition was finally determined. Joseph T. Klempner, Esq., to whom the court is indebted, undertook this unpaid task, acting upon instructions to add any legal or factual support he could discover or formulate for the petition. The products of Mr. Klempner's energetic and scholarly efforts are now before me. They show every evidence of thorough and devoted service.[1] In addition to attempts to buttress the single point tendered in the *pro se* petition, the new papers add con-

---

1. As is not uncommon, these efforts have not received unqualified approbation from the client. By a communication to the court sworn March 17, 1970, and entitled "Motion for Amended Order—of Order of Appointment and Assignment of Counsel," petitioner notes critically that months have elapsed since he filed his petition. He then demands (the underscoring is his) :

"1.) That no Court Appearances, Preconference Hearings—without First Consulting your Petitioner and Petition-

er expresse [*sic*] his approval both orally and in writing.

"2.) That no Motions, Docket Entries, Briefs, Legal Documents, Etc. whether they be oral or written without first consulting your Petitioner and Petitioner expresses his approval both orally and in writing."

These requirements may add to the labors hereinafter proposed for Mr. Klempner, but the court relies upon him for the kind of able assistance he has already supplied.

tentions that petitioner may have had conflicted counsel and that the plea may have been fatally infected by admissions petitioner had made to a government agent without sufficient warnings or legal assistance. Despite these considerable efforts by counsel, the petition does not yet, and probably never will, present grounds requiring a hearing. In the paragraphs following this, the court explains this probable conclusion and indicates the permissible, if unpromising, lines of further exploration left open to petitioner and his assigned counsel.

1. The brief supporting the petition contains an array of pertinent law and some hypotheses about the mysteries of narcotics addiction. It also suggests "conceivable" problems that might, if they should materialize in even an incipient way, warrant an evidentiary hearing. But close analysis reveals nothing warranting the trip to New York from his place of confinement in Atlanta that seems to be paramount among petitioner's desires.[2]

Acknowledging that petitioner was in jail for long before his guilty plea, counsel points to a letter in which petitioner says he was being given "medication from the city" during that period. Taking off from that, counsel says petitioner "may have" been getting narcotics. That is a long, imaginative and improbable leap.[3] If a judge taking a guilty plea must turn up and then bury "conceivables" of this order (Judge Motley, in her meticulous inquiries, did ascertain that petitioner had never received psychiatric care and was free of drug or alcoholic influences at the time of her proceeding), the project becomes hopeless, endless, and futile.

Counsel emphasizes that petitioner had been hospitalized in 1960 and at other times for his addiction. This was known long ago to counsel and the court, well before the judgment of conviction. Nothing appeared then that suggested to anyone—counsel for either side, the two judges presiding, respectively, at plea and sentence, or probation officers[4]

2. Mr. Klempner appends to an affidavit copies of letters from his client responding to what were counsel's apparent requests for relevant factual enlightenment. Petitioner's letters are markedly uninformative, as he himself acknowledges. He urges that he "can explain better in person" (letter of 1–29–70), and "that justice could not be truly served, were [he] not permitted to confer with [counsel] personally" (letter of 1–28–70, emphasis in original). He does not explain why he cannot indicate by letter the nature or location of useful evidence, if there is any. Mr. Klempner, seeking to serve his client loyally, says he needs personal consultation because, *inter alia*, he needs the client's consent for release of hospital and medical records. The court does not doubt, of course, that a lawyer is able to serve most effectively when the client is available readily and in person. But that cannot be decisive in a case where the client has been duly imprisoned under a judgment which, after extensive efforts to show otherwise, appears in all probability to be unassailable. In such circumstances, prisoners, indigent or affluent, may have to settle for less than ideal arrangements. As to the only concrete problem mentioned in this con-

nection—the need for consent to release of hospital and medical records—this is obviously manageable through the mails.

3. The pre-sentence report, prepared after the guilty plea of April 17, 1969, recounted petitioner's own statement that he had been free of drugs since Thanksgiving 1968. The report also conveyed the results of a medical examination at Federal Detention Headquarters on April 22, 1969, corroborating petitioner in this regard: the examination, we were informed, showed "no evidence of any recent narcotic usage * * *."

4. It is probably superfluous, but not otherwise hurtful, to note that prosecutors as well as defense counsel and probation officers are among the trained, alert, and sensitized observers participating in the scrutiny of defendants who propose to enter, are entering or have entered pleas of guilty. Relying only upon repeated instances of personal experience and the profoundly reliable reports of other trial judges, I know confidently that prosecutors and probation officers have repeatedly alerted the court (after a plea as well as before) to the existence of possible questions as to competence. The interest is compounded of noble and workaday mo-

—that the history was an indication of mental disorder approaching the level of "incompetence" in any apposite sense. On the contrary, every responsible observer and participant went on the unquestioned view, spoken or not, that petitioner was in unfettered possession of every relevant faculty. Among other cogent data, the pre-sentence report, referred to earlier (see note 3, *supra*), supported this view.

■ It appears, in sum, that there is nothing but airy speculation on which to float petitioner's tardy claim that he was incompetent all along. This is not to say, of course, that a petitioner must "establish" such a claim by his papers before he is entitled to an evidentiary hearing. Cf. Catalano v. United States, 298 F.2d 616 (2d Cir. 1962); United States v. Collier, 399 F.2d 705 (7th Cir. 1968); Nelms v. United States, 318 F.2d 150 (4th Cir. 1963); Hayes v. United States, 305 F.2d 540 (8th Cir. 1962); Teitelbaum v. United States, 300 F.Supp. 1282 (S.D.N.Y.1969). It is to say that he must present more than naked assertion, especially where the attendant circumstances are powerfully convincing that the assertion is baseless. It might require a hearing, for example, if petitioner (or counsel on his behalf) could offer the affidavit of a medical expert indicating a willingness to testify responsibly in favor of the claim, cf. Teitelbaum v. United States, *supra*, 300 F. Supp. at 1283, or if petitioner could adduce arguably supporting circumstances (of treatment for mental disorder, for example) from his autobiography, cf. United States v. Collier, *supra*; Nelms v. United States, *supra*; Teitelbaum v. United States, *supra*.

■ No such things have been shown here, and it appears unlikely that any exist. However, continuing, perhaps unduly, our course of abundant caution, and having in mind the possible difficulties experienced by assigned counsel in a case like this (see note 2, *supra*), the court will allow six more weeks in which counsel may adduce further materials responsive to the foregoing suggestions. Upon the failure of that effort (and for the additional reasons hereinafter noted), an order will be made dismissing the petition.

■ 2. As a new proposal, the amended petition suggests that petitioner "may have" been prejudiced because he and his "common-law" wife, who pled guilty to another indictment arising from the same course of depredations, were both represented by the Legal Aid Society. The vague possibility lacks substance. While the fact is not in itself decisive, petitioner and his wife had separate attorneys, and there is not the slightest indication that communications between these lawyers on the two related indictments had any impact of even theoretically arguable significance. The wife had pled guilty on February 3, and was sentenced on April 18, 1969, the day after petitioner entered his plea. There was (and is) no hint of genuine "conflict." There were no choices to be made in possible or actual trial strategy. Cf. Morgan v. United States, 396 F.2d 110 (2d Cir. 1968). There were (at least so far as the imaginations of the court and ingenious counsel have revealed) no inconsistencies of any kind and no occasions for divided or impaired loyalties of counsel. The claim of possible conflict fails, in short, because petitioner is unable to allege any "specific instance of prejudice * * * [or] real conflict of interest" of the kind essential to such a contention. United States v. Lovano, 420 F.2d 769, 773 (2d Cir. 1970).

■ 3. Another addition by assigned counsel is answered in comparably short

---

tives. All such people, not less than the judges, are intensely interested in avoiding occasions, however tenuous, for later claims like the one now in question. This thought is not mentioned as decisive. It is merely pertinent, along with other things.

compass. This argument is that the guilty plea must now be nullified, or reexamined in an evidentiary hearing, under the principles of United States ex rel. Ross v. McMann, 409 F.2d 1016 (2d Cir.), cert. granted, 396 U.S. 813, 90 S.Ct. 65, 24 L.Ed.2d 67, dismissed as moot, 396 U.S. 118, 90 S.Ct. 395, 24 L.Ed.2d 303 (1969),[5] because petitioner had, two months before his plea, given an incriminating statement, while in custody, to a Secret Service Agent. *Ross* granted a hearing to a petitioner who, having pled guilty in the state court, claimed his plea had been induced by the existence of an illegally obtained confession. The government's sufficient rejoinder to the citation of that precedent here is the uncontradicted demonstration that petitioner was apprised of, and knowingly waived, his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when he gave the statement. Moreover, the subject was carefully covered by Judge Motley (a fact counsel seems to have overlooked), and the waiver was fully reaffirmed in open court before her. These points make it unnecessary to enlarge upon the alternative, and probably equally decisive, point that *Ross, supra*—involving a New York State plea antedating Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), when there was no valid way of testing the lawfulness of a confession without placing it before the jury—probably has no application in any event to the federal procedures with which we are concerned. See United States ex rel. Rogers v. Warden, 381 F.2d 209, 213 n. 5 (2d Cir. 1967).

For the reasons indicated, unless some basis for an evidentiary hearing is shown within six weeks, the petition will be dismissed.